[Civ. No. 9609. First Appellate District, Division Two.—May 4, 1936.]

ALICE WEAVER et al., Respondents, v. SHELL COM-PANY OF CALIFORNIA (a Corporation) et al., Appellants.

Redman, Alexander & Bacon and Herbert Chamberlin for Appellants.

Vincent W. Hallinan, James H. Gillard and William F. Herron for Respondents.

STURTEVANT, J.—Lincoln Weaver was burned in a gasoline fire and from that injury he died January 22, 1927. His widow and two children commenced this action to recover damages. The jury returned a verdict in the sum of $50,000 and from the judgment entered thereon the defendants have appealed.

In the block located between Second and First Streets and Washington and Broadway in Oakland, a private plant is maintained by the Pacific Gas and Electric Company to service its motor vehicles. An alley extends between Second and First Streets. That alley is the entrance by which trucks serving the plant enter the premises. On the day of the accident the defendant Alfred H. Bodilly, acting as the ser-

vant of Shell Company of California, drove one of the gasoline trucks of the defendant corporation into the alleyway from Second Street. He passed along the alley to the front of the oil room which faces the south and there he stopped to make his delivery. He was informed by the decedent, who was in charge of the oil room, that the portable tank, spoken of as the buggy, was to be filled and he was also informed as to the quantity that was to be put into the sunken tank. The sunken tank extended under the south wall of the oil room. One valve of the tank was inside of the oil room and another valve was at the end of the tank outside of the oil room. They were of the same height. Each valve was covered with a metal cap which screwed on and off. Decedent took off the cap of the inside valve and stuck down a measuring rod, drew it out and handed it over to Bodilly to read. Whether decedent put back the cover on that valve does not appear. There is a plain inference he did not. Bodilly was using a General Motors truck having three compartments or tanks containing gasoline. The front one contained 643 gallons, the middle one 629 gallons and the rear one 438 gallons. All compartments were full. The truck was equipped with a two-inch hose about 15 feet long. It had a metal core encased in rubber with a cloth coating. One end was fitted to screw to the valve on the truck and the other end had an "L" shaped metal nozzle. As the nozzle on the hose did not fit the valve on the Pacific Gas and Electric Company tank, a nipple was used. The nipple was inserted in the valve and the nozzle on the hose was placed in it. Having been informed by the decedent as to what quantity was wanted, the defendant Bodilly proceeded to make his deliveries. The truck he was using had attached to it a two-inch hose, whereas the one he ordinarily used had a one and one-half inch hose. Each hose had one and one-half inch attachments and therefore discharged about the same quantity.

In their first point the defendants claim that the judgment lacks evidentiary support for the reason that the evidence does not establish that any negligence of the defendants was the proximate cause of the death of Lincoln Weaver. Before proceeding it should be stated that the trial proceeded on two very different theories. It was the contention of the plaintiffs that Bodilly, in making his delivery, caused or allowed the gasoline to overflow the intake valve on the

outside of the oil room, to spread out over the floors outside, to generate gasoline vapors, and then, by carelessly using apparatus that was not properly equipped, caused and allowed static sparks to be generated outside of the oil room and directly connected with the apparatus which the defendants were using, and allowed said sparks to ignite said gasoline vapors outside of said room and thus caused the fire which injured the deceased. Whereas it was the contention of the defendants that Bodilly spilled no gasoline, that the apparatus of the defendants generated no sparks and that if it did such sparks were properly grounded by a pendant chain attached to the delivery truck. Further, they claimed that the electric light wires and the wires connected with the heating stove, all of which were contained in the oil room controlled and operated by the Pacific Gas and Electric Company, were out of repair and that they emitted the sparks that caused the fire. Furthermore, they claimed the fire started in the oil room, an explosion followed, and gasoline was blown out of the tank and spread inside and outside of that room. There was no direct evidence supporting the theory of the plaintiffs. Bodilly, the driver of the truck, testified to facts supporting the theory of the defendants. There were conflicts in his testimony. But no witness contradicted any material portion of his testimony. No witness testified he saw the spark that started the fire. Several witnesses testified they heard an explosion. After the explosion there was flowing gasoline which was on fire both outside and inside of the oil room. Whether that flowing gasoline was blown out by the explosion or whether the defendant Bodilly spilled it and later it was ignited, spread and did the damage, was the real issue in the case. As stated there was no direct evidence thereon. The proof, if any, rested on the indirect evidence. The question as to what rules regarding indirect evidence should be applied and followed by the jury therefore became of vital importance in the trial. The plaintiffs relied on the benefits of the *res ipsa loquitur* doctrine. Without the application of that doctrine to the case, we think it is clear from what we have said above that the judgment lacks evidentiary support and as will presently appear we think that doctrine was inapplicable.

Acting upon the request of the plaintiffs the trial court gave two instructions, and acting upon its own motion

it gave another, each of which applied the doctrine of *res ipsa loquitur* to the facts of the case. The defendants assert that said doctrine was inapplicable. They specify several grounds. Among others they contend that the doctrine was inapplicable because the instrumentality causing the accident was not under the exclusive control of the defendants. There was no direct evidence as to what caused the fire. The defendant corporation had brought on to the premises gasoline in a motor truck. When it arrived on the premises the Pacific Gas and Electric Company already had on the premises quantities of gasoline and certain appliances and equipment. While Bodilly was making his delivery other equipment of the Pacific Gas and Electric Company drove up to the gas station, took deliveries, and left. In no manner in which the facts are viewed can it be said that the defendant corporation was in the exclusive control and management of the instrumentality causing the injury complained of. It is therefore clear for that reason the facts in the instant case did not warrant the application of the doctrine of *res ipsa loquitur*. Again the defendants assert that the doctrine was inapplicable because information as to the cause of the accident was not more accessible to the defendants than to the plaintiffs. They cite and rely on *Johnson* v. *Ostrom,* 128 Cal. App. 38, 43 [16 Pac. (2d) 794], and many other cases. The case last cited is directly in point and sustains their contention. *Gritsch* v. *Pickwick Stages System,* 131 Cal. App. 774 [22 Pac. (2d) 554], is also in point. In that case the plaintiff was injured in a collision between one of the Pickwick stages and a Buick car. The plaintiff sought to rely on the application of the *res ipsa loquitur* doctrine. On page 783 this court held that the doctrine was inapplicable, saying: ''Thus it has been said that the doctrine is applicable only when the nature of the accident itself not only supports the inference of defendant's negligence but excludes all others. (Citing several cases.)'' So in the instant case. The facts adduced showed no more reason for inferring that the accident occurred through the negligence of these defendants than it did through the negligence of the Pacific Gas and Electric Company. In view of the other testimony introduced in the case and which we have quoted above, we think it is entirely clear that the error committed by giving said instructions was highly prejudicial.

Nothing said in *Gerdes* v. *Pacific Gas & Electric Co.*, 219 Cal. 459 [27 Pac. (2d) 365, 90 A. L. R. 1071], is opposed to anything which we have said. In that case two of the defendant corporations appealed. The record disclosed that during the trial direct evidence of the negligence of each corporation was introduced. The trial court gave specific instructions on the issue so made. It also gave instructions applying the doctrine of *res ipsa loquitur*. The jury returned a general verdict. The Supreme Court held that such verdict was in effect a finding against the defendants on the issue made by the direct evidence and that it could not therefore say as a matter of law that the giving of the instruction on *res ipsa loquitur* was prejudicial error.

The defendants also claim that the plaintiffs' counsel was guilty of misconduct. In another place they contend that the trial court erred in giving an instruction on the suppression of evidence. As the two attacks involve the same incidents occurring during the trial, they will be considered together. At the time the accident happened there was in the employ of the Pacific Gas and Electric Company a man by the name of Martin Fahey whose duty it was to investigate the facts regarding accidents. He investigated the facts regarding the accident in the instant case. He took some pictures. He interviewed the decedent and made some notes on that interview, and in other respects prepared a report for his employer. That report was for some time among the files of the Pacific Gas and Electric Company. Afterwards Fahey died. At the time of the trial in the instant case witnesses testified that the file was no longer in the possession of the Pacific Gas and Electric Company. What had become of it the record failed to disclose. What was contained in the report that was competent and material evidence on the trial of the issues the record wholly fails to disclose. The same remark applies to what was contained in the pictures. We find nothing in the record indicating that the defendants suppressed or destroyed the file.

Another incident involves the following facts. The plaintiffs called as a witness, under section 2055 of the Code of Civil Procedure, A. H. Bodilly the driver of the truck and one of the defendants. Speaking of the manner and sequence in which he made the deliveries the witness said he first filled the tank on the buggy and then started to fill the sunken

tank. Being dissatisfied with those answers plaintiffs' counsel sought to show that Bodilly started the filling of the sunken tank and, while it was being filled he started to fill the buggy tank. The witness stated that such was not the sequence and could not be as there was only one faucet on each tank and he was not at liberty to take gas out of either of the other tanks because the contents of each of them had been ordered by other purchasers. In that connection he stated that such other purchasers on certain days took certain amounts. To disprove that fact he was asked to produce the delivery sheets. Mr. Alexander, counsel for defendants, said they were kept but two years and then destroyed. He was then asked if defendants had copies of statements that had been filed with the state board of equalization showing deliveries of gasoline during the years 1926 and 1927. He replied he did not know, he would try to find out. During the presentation of evidence nothing further was said on the subject. No other incident having the color of suppression occurred during the trial. During his argument to the jury counsel for plaintiffs separately intimated that the nonproduction of said file of the Pacific Gas and Electric Company and the nonproduction of the statements rendered to the state board of equalization were each acts of suppression. The defendants objected to the remarks assigned them as misconduct, and asked that the jury be admonished. In each instance a discussion followed in which counsel for the plaintiffs greatly aggravated and augmented the offense complained of. In no instance did the trial court admonish the jury, but merely stated that said subjects were a matter of argument. It is said the trial court was not asked to admonish the jury. We think it was. It was a three-sided discussion. The request was clearly made—perhaps out of place—but the trial court must have heard and appreciated its nature. However, the trial court seemed to be laboring under the impression that a foundation had been laid, whereas we think none had been. Much was said in the trial court, and much is said in the briefs, about *inferences*. That subject is not involved. Inferences rest on facts proved and are not mere guesses. After the above matters transpired, in hectic arguments between counsel and between court and counsel, covering nearly thirty folios, the trial court instructed the jury. Among others, the court gave the following instruction: ''I instruct you

that under the law the presumption is that evidence wilfully suppressed could (sic) be if produced adverse to the party suppressing it, and that higher evidence would be adverse from inferior being produced.'' When all of these incidents are noted and read together it clearly appears that the rights of the defendants were greatly prejudiced and that it cannot be said they had a fair trial.

The judgment is reversed.

Nourse, P. J., and Spence, J., concurred.

A petition by respondents to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on July 2, 1936. Curtis, J., voted for a hearing. Nourse, J., pro tem., being disqualified, did not participate therein.