Frances CARDINALE et al.,
Libelants,

v.

UNION OIL COMPANY OF CALIFORNIA, a corporation, et al.,
Respondents.

No. 27098.

United States District Court
N. D. California, S. D.

Jan. 12, 1956.

488

Morton L. Silvers, San Francisco, Cal., Morgan & Beauzay, San Jose, Cal., for libelants.

Boyd & Taylor, San Francisco, Cal., for respondents.

ROCHE, Chief Judge.

This case involves the death of Frank Cardinale, occurring on navigable waters aboard the vessel Santa Lucia. This court has jurisdiction of this cause pursuant to 46 U.S.C.A. § 740.

The facts of this case are as follows: On September 28, 1954, shortly before 5:30 p. m. the fishing boat, Santa Lucia, came into the Union Oil dock at Avila, California, in order to take aboard gasoline. As the Santa Lucia came into the Union Oil dock, the tanker Lompoc, which was standing at least two hundred, to two hundred-fifty feet away, was finishing the loading of almost one and one-half million gallons of Orcutt enriched crude, which it had been loading for some six and one-half hours before the appearance of the Santa Lucia. This fuel, Orcutt, is highly volatile, containing approximately seventeen per cent natural gasoline.

The dock attendant passed the gasoline hose down to the boat Santa Lucia which was standing fifteen feet below the dock, and opened the valves at the meter allowing gasoline to flow into the gasoline lines. As decedent took the hose the dock attendant asked him approximately how much gasoline he would need. Decedent replied about 30 gallons. Decedent then placed the nozzle (spring loaded type) into the fill opening of the gasoline tank, which opening was flush with the deck, and commenced the fueling operation. The gasoline tank, itself, was located under the deck, held there by hangars, and could only be seen by some one below decks. Decedent had complete control, once the hose was passed to him, of the flow of gasoline into the tank. As there was a shut off at the end of the hose, decedent could have stopped the flow of gasoline at any time. The meter which measured the flow of gasoline stood approximately twenty-six inches high above the floor of the dock, and was located six feet back from the edge of the dock, where it could not be seen by decedent in the boat, located as it was, below the dock. It is uncontroverted that a meter reading taken some time later indicated that fifty eight gallons of gasoline had been delivered out of the storage tanks on the dock. The fishing vessel's gasoline tank had a maximum capacity of about forty gallons. It was also uncontroverted that no gasoline spilled on the deck of the Santa Lucia, showing that decedent had not carelessly allowed the tank to overfill. About one and one-half hours before the Santa Lucia commenced fueling, a complete inspection of the boat for insurance purposes had been made by Captain Hansen, an experienced marine surveyor. It was Captain Hansen's opinion at the time that the fishing boat was seaworthy and that its gas tank was in sound condition. Some time after fueling commenced, as a result of gasoline vapors which had collected in the hold of the fishing boat, an explosion and fire ensued causing the death of Frank Cardinale.

Libelants have set forth several theories in their libel by which they place responsibility for the explosion and fire on respondents. Said libel reads in part as follows:

"That on or about September 28, 1954 * * * respondents negligently maintained, inspected, operated and controlled the gas fueling equipment and dock * * * known as the Union Oil Company dock at Avila, California; negligently fueled, and supervised the fueling of the Santa Lucia, of which vessel Frank Cardinale was part-owner and engineer, while said vessel was moored to said dock; negligently failed to observe, watch and control the quantity of gasoline pumped aboard said vessel from the Union Oil Company gasoline pump located on said dock; negligently and carelessly permitted more gasoline to be pumped aboard said vessel than was ordered or the vessel's gasoline tank would hold; negligently permitted the Santa Lucia to dock and be moored in an area where a dangerous accumulation of vapors and gasoline fuel existed; and negligently and carelessly failed to warn the crew or master of the Santa Lucia of said accumulation."

The libelants have the burden of proving negligence on the part of the respondents. It has been submitted by both counsel for libelants and respondents that one of two things occurred causing this catastrophe. Either the equipment on the dock was defective, or the gasoline tank on the fishing vessel was defective; and that this defect resulted in the liberation of gasoline which caused the fatal sequence of events. There is no direct evidence supporting either of these theories. No witness testified to having observed gasoline spilling on the dock, nor did any witness testify to having observed the fishing boat's gas tank leaking at the time gasoline was being taken aboard.

If libelants' theory is the correct one, that the defect existed on the dock, then it would require the court to believe that twenty to thirty gallons of gasoline spilled out on the Union Oil dock in the vicinity of the meter, and that although a number of people were in the area not one detected the presence of gasoline. In view of the physical facts this seems highly improbable. It would mean that the dock attendant, the three men who were aboard the tug Avila some 40 feet away or less, and the men who were on the fishing boat, all failed to detect the large quantity of fuel that would have spilled out on the dock.

Following the explosion and fire an inspection was made of the fueling equipment on the dock and nothing was found wrong either in the gasoline storage tank or the lines that run from the tank to the meter, which meter is six feet away from the edge of the dock. The gasoline storage tank itself was not ruptured or blown up, and the gasoline that was in the storage tank was salvaged and used later. All of the pipes, all of the connections running from the gasoline storage tank to the meter were determined to be sound. Therefore, if approximately thirty gallons of gasoline was dumped on the dock, it had to be spilled past the meter or in the area of the meter some six feet from the edge of the wharf. As stated previously, no witness testified either to having seen or smelled the spillage.

The photographs placed in evidence reveal that there had to be a tremendous underwater explosion aboard the fishing boat. In order to have an explosion of the type pictured, there had to be and was of necessity a quantity of gasoline vapor within the boat itself. Under the theory of libelants' case, those vapors were sucked into the boat from the Lompoc, which was fueling in the neighborhood of the Santa Lucia, and/or from the gasoline allegedly spilled out on the dock. The witnesses who were experts in their fields, and the literature on the subject of the toxic effect of fumes, manifest an absolute impossibility that fumes from the Lompoc could have had a causal connection contributing to the explosion. It is significant that of the witnesses who were in the immediate area, not one, either from the

Lompoc, or the Santa Lucia, or the tug Avila, testified as to having experienced any personal discomfiture whatsoever, or of noticing any unusual concentration of fumes or smell of petroleum products on the day in question. It is the court's conclusion that the evidence failed to show that the Lompoc's fueling had any causal relationship with the explosion and fire.

Testimony was given in this case by Captain Hansen, a Coast Guard licensing examiner who had checked over the boat about 90 minutes before the fire and explosion. The broker who wrote insurance for the fishing boat was aboard the fishing boat with this witness. The captain testified that on a prior inspection, about a year before this accident, he found the fishing boat to be in poor housekeeping condition, wiring in poor condition, and generally filthy and dirty. As to his inspection of the gasoline tank on the day of the explosion and fire, the witness said that his test consisted of running his hand over the tank and feeling the valves. He stated that he did not know of what material the tank was made of, nor its capacity, and that he did not pressure test the tank. On the basis of this inspection the Captain testified that in his opinion the tank was sound. The court does not attach great weight to this witness' testimony. As far as the record reveals, nothing having been established to the contrary, both the gasoline tank on the boat, and the equipment on the dock were all in proper working condition up until the time this accident took place. The crucial point, is, what was the condition of this equipment during the moments that the gasoline escaped. Was the gasoline tank on the boat leaking, or was the equipment on the dock defective in some way? As to these points the record is silent.

 A number of witnesses testified in this case regarding what they saw take place on the fateful day of the explosion. The court must conclude that the substance of their testimony did not sustain the burden that libelants must carry in this case. See Weaver v. Shell Co. of California, 1936, 13 Cal.App.2d 643, 57 P.2d 571; and Weaver v. Shell Oil Co. of California, 1939, 34 Cal.App. 2d 713, 94 P.2d 364. As in the case of Weaver v. Shell Oil Co. of California, 1936, 13 Cal.App.2d 643, 57 P.2d 571, the facts adduced at the trial show no more reason for inferring that the accident occurred through the negligence of respondents than it did through the negligence of the fishing boat. Speculation cannot take the place of evidence, and if the court were called upon to make findings in favor of libelants in the instant case it could not do so. Respondents have produced evidence which in the court's view is consistent with the premise that the explosion and fire resulted from a defective condition of the gasoline tank aboard the Santa Lucia. Libelants have failed to sustain the burden of proving otherwise by a preponderance of the evidence.

In accord with the foregoing,

It Is Ordered That a decree be entered herein upon findings of fact and conclusions of law in favor of respondents, and against libelants. The respective parties to pay their own costs.