[Civ. No. 24274. Second Dist., Div. Three. Aug. 9, 1960.]

PAULINE JAQUES, Appellant, v. FIRESTONE TIRE AND RUBBER COMPANY (a Corporation) et al., Respondents.

Everett E. Demler and Floyd H. King for Appellant.

Henry R. Thomas and Henry F. Walker for Respondents.

VALLÉE, J.—Appeal by plaintiff from an adverse judgment entered on a unanimous jury verdict in an action for damages for alleged false imprisonment.

Viewing the evidence in the light most favorable to defendant-respondent, the facts are these: Plaintiff's husband, Elmo Jaques, conducted a back-yard machine shop in the garage of his home where he manufactured small wire brushes. The brushes were sold to defendant Firestone and used in the fuel cell division to clean the threads of bolt holes. Elmo Jaques was assisted in manufacturing the brushes by Frank Bowen, Robert Hatherst, and plaintiff. Plaintiff was a supervisor in the fuel cell division of Firestone about six years before the events in question. Frank Bowen was a foreman in the same division. Plaintiff had authority to requisition wire brushes from her husband. She was the only one who delivered any of the brushes to Firestone. She brought them in an ordinary paper sack and deposited them in the storeroom from which they were withdrawn by plaintiff and her cosupervisors. She delivered about 2,000 brushes twice a month. Until about October 1, 1954, plaintiff requisitioned about 100 brushes daily from her husband for her department. During the month preceding October 29, 1954, the number of brushes requisitioned by her from her husband "jumped" to about 300 brushes daily.

The increase caused an investigation to be made to ascertain what was happening to the brushes. About October 14 Davidson, assistant chief of plant protection, was instructed to conduct the investigation. Investigating the discard cans, he found no evidence of brushes being thrown away or misused. About October 15, he marked some 6,000 brushes in the storeroom with an invisible phosphorescent material which showed only in black light. About October 22, 1954, two bags of 1,000 brushes each were delivered by plaintiff to the storeroom in the fuel cell division. Davidson found that 500 brushes in one of the bags showed the phosphorescent marks, "showed

evidence of having been in the plant, removed and brought back to the plant."

Plaintiff's husband, having received an order for 800 brushes on October 28, 1954, to be delivered October 29, called Young, Firestone's production manager, on the 28th and told Young of the 800-brush order. Young told him they had thousands of brushes in the store and could not imagine why they needed more but to send them if they had been ordered. These brushes, when delivered by plaintiff on the 29th, were checked by Davidson who found no markings on them. Plaintiff's husband testified that on the morning of the 29th because of the conversation with Young he was suspicious "that something was phony," and he told plaintiff that morning that something "irregular or fishy" was going on.

Later, on October 29, Davidson asked plaintiff to go to the conference room with him. They arrived about 1:10 p. m. There was evidence that plaintiff voluntarily went to and remained in the conference room for an hour and a half. During that time plaintiff told Brandenburg, assistant controller at Firestone, that Frank Bowen had removed the brushes from the plant and that she had redelivered them to it. She was asked if she would be willing "to make out a statement." She said she would do so, and asked, "What shall I write." Brandenburg replied, "Just write as briefly as possible, and tell us exactly what you told us before." Plaintiff wrote and signed a statement which is set out in the margin.[1]

There was evidence on the part of plaintiff that she was detained until 7:45 p. m. However, there was evidence to the contrary. Shortly before 3 p. m. she was told she could leave. Plaintiff said: "I want to get this mess cleaned up, I would like to get it straightened out, get my husband in and he can straighten this thing out." Since her husband worked at a North American aviation plant, the request had to go through the security office. Davidson called security at North American. About 3 p. m. plaintiff went to the cafeteria and had coffee. After having had coffee, she went to McGee's office to wait for her husband. About 3:30 she used the tele-

---

[1] "Mr. Gardiner                                        10-29-54

"I Pauline took Brushes from Firestone quantity unknown. Frankie Bowen also took Brushes. These Brushes were sold back to Firestone. I delivered them personally on or about October 22. Some of this same delivery were the Brushes took on or about Oct. 20 or 21.

"These Brushes were made by Pauline Frank & Bill. We have made them about 1 year. Frank gets some pay for his work.—Frank suggested taking the Brushes.

"Pauline Jaques"

phone. Her husband arrived about 5:20 p. m. He was interrogated by Firestone officials, wrote and signed the statement set out in the margin.[2] Plaintiff and her husband left about 7 p. m.

Plaintiff contends defendants' answer insufficiently pleads the defense of probable cause. The point is without merit. The answer was filed November 28, 1955. There was no demurrer to the answer. Pretrial was had a little over two years before commencement of the trial. Plaintiff has not included the pretrial order in the record. ██ Generally, the pretrial order supersedes the pleadings. (*Baird* v. *Hodson,* 161 Cal.App.2d 687, 690 [327 P.2d 215].) ██ We must presume that the pretrial order specified that one of the issues was probable cause.

██ It is asserted the evidence is insufficient to support the verdict. Plaintiff argues, "There is no evidence in the whole of the record that defendants had any ground to believe that any wire brushes had been stolen except the 500 marked brushes received at Firestone on October 22, 1954, which was seven days prior to plaintiff's detention." On this premise it is said the evidence showed a single past or fully completed taking, as to which it is asserted no reasonable investigation with reasonable inquiries of employees, including plaintiff, could be made by Firestone without liability for false imprisonment. The basic premise is erroneous. The evidence showed the number of brushes requisitioned by plaintiff suddenly rose from about 100 to about 300 a day. It reveals a continuous depletion or taking of brushes daily commencing about a month before and continuing up to the inquiry on October 29, 1954. The jury could reasonably infer from the evidence of the sudden increase in the number of brushes requisitioned by plaintiff that plaintiff and Frank Bowen were engaged in taking the extra brushes out of the plant and reselling them to Firestone. Plaintiff's activities in taking brushes were not at any time a completed or finished

---

[2] "Mr. H. J. Brandenburg:                    Oct. 29, 1954

"Dear Sir:

"As a matter of illegal shipment of 10/22/54 of brushes which I sell to your co. is in question, I hereby admit same as a means to cover a loss of apprx $100.00 to myself. This loss was due to a cancellation of a purchase order given me by Mr. Whitel, which caused me to stop mfg. and assume loss. I attempted (at the suggestion of Mr. Bowen) to cover loss by redelivery of brushes, which he took from Firestone.

"Respectfully
"E B Jaques"

taking but a series which was still going on at the time of the inquiry. The evidence supports the verdict. (See *Collyer* v. *S. H. Kress & Co.*, 5 Cal.2d 175 [54 P.2d 20].)

■ Plaintiff contends two instructions given by the court were prejudicially erroneous. Plaintiff is in no position to complain of the giving of these instructions. She has not furnished a record which discloses the source of any of the instructions given—whether at the request of defendant, or at her request, or on the court's own motion. (*Rodriguez* v. *City of Los Angeles*, 171 Cal.App.2d 761, 768 [341 P.2d 410].)

In a casual fashion plaintiff complains of the refusal of the court to give two instructions proffered by her. All that is said is, ''Of course, it is plaintiff's contention that the court should have instructed the jury in accordance with plaintiff's instructions 7 and 9 [Rep. Tr. pp. 527, 528-529] which told the jury that defendants did not have a privilege to detain the plaintiff under the facts of this false imprisonment case.'' No argument is made or authorities cited in support of the assertion. The point may not be considered.

■ It is the office of a brief attacking a ruling to point out the error complained of as shown by the record, to state the points on appeal under appropriate headings, to give arguments and authorities in support of the points made, and to show that the error resulted in prejudice to the substantial rights of the appellant. When this is not done, the claimed errors will not be reviewed by the appellate court. (*Estate of Volen*, 121 Cal.App.2d 161, 166 [262 P.2d 658]; *Hogan* v. *Miller*, 153 Cal.App.2d 107, 117 [314 P.2d 230]; *Abrams* v. *Bendat*, 165 Cal.App.2d 89, 95-96 [331 P.2d 657].)

Affirmed.

Shinn, P. J., and Ford, J., concurred.

A petition for a rehearing was denied August 22, 1960, and appellant's petition for a hearing by the Supreme Court was denied October 5, 1960.