[Civ. No. 10579.   Third Dist.   Sept. 30, 1963.]

BARBARA HOUSER, Plaintiff and Appellant, v. HOWARD FLOYD et al., Defendants and Respondents.

. P. M. Barceloux, Burton J. Goldstein, Goldstein, Barceloux & Goldstein and Reginald M. Watt for Plaintiff and Appellant.

Fitzwilliam, Memering, Stumbos & DeMers, McGregor, Bullen, Saldine & Erich, Louis A. DeMers, Norwood R. Erich and Guernsey Carson for Defendants and Respondents.

FRIEDMAN, J.—Plaintiff, a young married woman, was injured in a fall from a ski lift operated by defendants. Her negligence suit went to trial before a jury, which returned a defense verdict. She appeals from the ensuing judgment.

The ski lift consisted of moving overhead cables suspended from towers. Two-passenger chairs were suspended from these cables. The chairs faced forward as the cable transported them up the side of the hill or mountain. On either side of each chair was a movable safety bar which, in its lowered position, extended across the passenger's lap. Beneath the chair was a footrest which moved in conjunction with the safety bar. When the safety bar was lowered the footrest

came forward and was available for the passenger's use. When the bar was raised, the footrest moved back underneath the seat, thus being out of the way when the passenger mounted or alighted. Underneath each seat, at the point where the footrest was connected to an arm leading to the safety bar, was a vertical metal bolt or adjusting pin approximately one-half inch in diameter and 3 inches long. The pin was designed to adjust the movement of the footrest in relationship to that of the safety bar.

Skiers using the lift wore their skis and carried their ski poles. Two exit stations or ramps were available. One was at the top of the hill; the other, an intermediate station, part way up the hill. At the side of the intermediate station was a small hut or shed. Inside was a switch which could start or stop the cable. An attendant named Floyd was stationed there. The cable did not stop to discharge passengers at the intermediate station. Rather, passengers simply left the moving chair by means of a snow-covered ramp, traversing first a horizontal portion of the ramp, then coming to a downward slope. As the seated passenger approached the ramp, he would lift the safety bar on his chair, permitting his skis to dangle in the air. Signs instructed him to raise his ski tips. As the chair moved along the level portion of the ramp, the rear end of his skis would come in contact with the ramp and slide along its length. When he came to the downward portion of the ramp he would rise from his chair, lower his skis to the ramp surface, give a slight push and ski down the ramp as the moving chair passed over his head.

Mrs. Houser came to defendant's establishment with her husband, her brother and her brother's wife. Although Mrs. Houser was an experienced skier, she had used lifts of the kind owned by defendant on only two prior occasions. She had made four or five earlier trips on defendant's ski lift the morning of the accident and experienced no difficulty in mounting or alighting. She was wearing a parka or jacket borrowed from her brother, which was somewhat large for her. On the trip in question she and her husband occupied the same chair. They planned to dismount at the intermediate station. When they arrived at the station, Mr. Houser exited from the chair in the usual manner. Mrs. Houser started to leave the chair but for some reason failed to do so. She was carried past the discharge point and commenced to scream. Floyd, the attendant, saw her hanging from the chair and threw the power switch, stopping the cable. At that

point the chair was suspended 18 to 20 feet above the lower portion of the off-ramp. Mrs. Houser was hanging from the chair by her hands, which grasped the footrest. Floyd attempted to throw a rope to her but failed. Unable to maintain her grip any longer, she fell to the ramp, sustaining the injuries for which she sues.

Evidence of the precise cause of plaintiff's mishap is not clear. We summarize testimony of the various witnesses:

(1) Floyd, the attendant at the intermediate station, stated that he heard Mrs. Houser scream. When he first saw her, she had moved out of her chair and the back of her parka was hooked to the adjusting bolt beneath the chair. He turned away to pull the power switch and when he looked back he saw that she had managed in some fashion to turn and get a grip on the footrest.

(2) Mrs. Spaulding, plaintiff's sister-in-law, was riding in the next chair to the rear. She heard Mrs. Houser scream. At that point the ramp blocked her view but as the cable carried her chair along and then came to a stop, Mrs. Houser came into view. On direct examination Mrs. Spaulding testified that she did not know whether Mrs. Houser was hanging by her jacket or had turned and was hanging on the bar of the footrest by her hands. On cross-examination she stated that Mrs. Houser was suspended by her parka. The parka, with a small tear in the shoulder, was exhibited to the jury.

(3) Plaintiff's husband testified that he had left his own section of the chair and was moving down the ramp when his wife screamed. He looked up and saw her suspended from the chair. Her legs and arms were free. He glanced away to see what Floyd was doing; when he looked back his wife was hanging by her hands.

(4) Mrs. Houser testified, ''I gave a small twist out of the chair and I was caught.'' She stated that her ski poles and skis were free, not being caught on any part of the chair. At first she said she was caught by her parka, then that she did not know what held her to the chair and prevented her from leaving.

(5) One Finch, a ski patrolman, saw Mrs. Houser start to leave the chair, that she hesitated, then stopped, that she remained seated in the chair, began to yell, then tried to drop out of the chair to the ramp below but remained hanging by both hands; that he did not see her hooked to the adjusting pin by her parka; that he could not say one way or another whether she was hooked by her parka.

On appeal, plaintiff assails the trial court's refusal to give two instructions on the subject of res ipsa loquitur, principally the following instruction: "If, and only in the event, you should find that there was an accidental occurrence as claimed by the plaintiff, namely: *That the back of her parka caught on a portion of the ski-chair as she was alighting from the ski-chair;* and if you should find that from that accidental event, as a proximate result thereof, plaintiff has suffered injury, you are instructed as follows: an inference arises that the proximate cause of the occurrence in question was some negligent conduct on the part of the defendant. That inference itself is a form of evidence, and if none other exists tending to overthrow it, or if the inference, either alone or with any other evidence supporting it, preponderates over contrary evidence, *it warrants a verdict for the plaintiff.* Therefore, you should weigh any evidence tending to overcome that inference, bearing in mind that it is incumbent upon the defendant to rebut the inference by showing that it did, in fact, exercise ordinary care and diligence or that the accident occurred without being proximately caused by any failure of duty on its part." (Italics supplied.)*

Conditions for the application of res ipsa loquitur are authoritatively summarized in *Zentz* v. *Coca Cola Bottling Co.,* 39 Cal.2d 436, 446 [247 P.2d 344]: " ... res ipsa loquitur applies where the accident is of such a nature that it can be said, in the light of past experience, that it probably was the result of negligence by someone and that the defendant is probably the person who is responsible. In determining whether such probabilities exist with regard to a particular occurrence, the courts have relied both upon common knowledge and the testimony of expert witnesses, and they have considered the circumstances relating to the accident in each particular case, such as the extent of control exercised by the defendant, the plaintiff's own conduct, the likelihood of negligence by some third person, and, in some situations, evidence that the defendant is better able than the plaintiff to explain what happened."

Use or exclusion of the rule thus turns on a "balance

---

*The instruction was adapted from BAJI 206, California Jury Instructions, Civil (4th ed. 1956). After the trial of this case, BAJI 206 was withdrawn in connection with a revision of suggested instructions on res ipsa loquitur.

of probabilities.'' Where no balance of probabilities in favor of negligence can be found, res ipsa loquitur does not apply. (*Tucker* v. *Lombardo,* 47 Cal.2d 457, 465 [303 P.2d 1041]; *LaPorte* v. *Houston,* 33 Cal.2d 167, 169-170 [199 P.2d 665].)

■ If it is equally probable that the accident resulted from the conduct of the plaintiff, then the probabilities are not balanced in the direction of the defendant's negligence and the res ipsa loquitur inference must be excluded. (*Berryman* v. *Bayshore Constr. Co.,* 207 Cal.App.2d 331, 333 [24 Cal.Rptr. 380]; *Sample* v. *S. H. Kress & Co.,* 190 Cal. App.2d 503, 507-508 [12 Cal.Rptr. 198]; *Simmons* v. *F. W. Woolworth Co.,* 163 Cal.App.2d 709, 712-713 [329 P.2d 999].)

■ Participation by the plaintiff does not necessarily bar res ipsa loquitur, so long as the evidence excluded his conduct as the responsible cause. (*Zentz* v. *Coca Cola Bottling Co., supra,* 39 Cal.2d at pp. 444-445; *Baker* v. *B. F. Goodrich Co.,* 115 Cal.App.2d 221, 228-229 [252 P.2d 24]; Prosser, *Res Ipsa Loquitur in California,* 37 Cal.L.Rev. 183, 201; Witkin, California Evidence, pp. 115-116.)

■ Frequently, exclusion or application of res ipsa loquitur turns upon a preliminary decision of fact—whether, viewing the evidence in the light of common experience, the balance of probabilities does indeed point in the direction of the defendant's negligence. ■ Where the evidence creates any doubt as to existence of the conditions for application of res ipsa loquitur, the decision is one of fact to be made by the jury, not one of law for the trial judge. (*Davis* v. *Memorial Hospital,* 58 Cal.2d 815, 817 [26 Cal.Rptr. 633, 376 P.2d 561]; *Guerra* v. *Handlery Hotels, Inc.,* 53 Cal.2d 266, 271 [1 Cal.Rptr. 330, 347 P.2d 674]; *Welker* v. *Scripps Clinic etc. Foundation,* 196 Cal.App.2d 338, 343-344 [16 Cal.Rptr. 538]; *Dunn* v. *Vogel Chevrolet Co.,* 168 Cal.App.2d 117, 121 [335 P.2d 492]; Prosser, *op. cit.,* 37 Cal.L.Rev. at pp. 194-195.) More simply, ''... the doctrine is not applicable where it is equally probable that the accident was caused by some fault for which the defendants are not liable, but this usually presents a jury question.'' *Borenkraut* v. *Whitten,* 56 Cal.2d 538, 547 [15 Cal.Rptr. 635, 364 P.2d 467].)

■ There is no evidence here of negligent operation of the ski lift. Plaintiff claims negligence in the presence of the projecting adjustment pin beneath the ski-lift chair, which, plaintiff charges, hooked the back of her parka, prevented her from leaving the moving chair as it came to the discharge ramp and carried her into midair. The claim involves a static

circumstance, an assertion of dangerous condition or design of the instrumentality after the defendants relinquished control and placed it in plaintiff's hands. That the injured person's action then played a role in the mishap does not foreclose res ipsa loquitur so long as the plaintiff handled the instrumentality in a proper and normal fashion. (*Burr* v. *Sherwin Williams Co.*, 42 Cal.2d 682, 687 [268 P.2d 1041]; *Zentz* v. *Coca Cola Bottling Co.*, *supra*, 39 Cal.2d at p. 444; Prosser *op. cit.* at pp. 201-202.)

On this score, however, the evidence was anything but clear. The testimony provided a basis for at least three separate and conflicting inferences: (a) that Mrs. Houser had voluntarily attempted to leave the chair after permitting herself to be carried past the discharge point; (b) that she had caused her clothing to be caught on the adjusting pin either by an abnormal motion or because her borrowed parka was overly large; or (c) that the adjusting pin had caught her clothing notwithstanding normal activity on her part. Thus uncontradicted evidence did not establish the preconditions for res ipsa loquitur as a matter of law. Whether these preconditions existed was a fact question for jury decision.

The instruction requested by plaintiff took this question from the jury. It assumed a balance of probabilities in favor of negligence, hinged only to the single contingency that the back of plaintiff's parka caught on some portion of the chair, without regard to Mrs. Houser's voluntary actions as a possible cause. Having made that assumption, it then commanded the jury to draw the inference of negligence as a matter of law, thus depriving the defense of the benefit of jury deliberation upon the balance of probabilities issue. Where res ipsa loquitur does not apply as a matter of law, it is error to instruct the jury to draw the res ipsa loquitur inference unless they are first directed to find whether the conditions for res ipsa loquitur exist. (*Guerrero* v. *Brown's Lumber Co.*, 196 Cal.App.2d 530, 532 [16 Cal.Rptr. 628]; *Kite* v. *Coastal Oil Co.*, 162 Cal.App.2d 336, 344 [328 P.2d 45].)

The instruction was improper for a second reason: It told the jury that the res ipsa loquitur inference warrants a verdict for the plaintiff. Such an instruction commands the jury to award damages if the defendant's negligence is inferred, without regard to possible contributory negligence on the part of the plaintiff. Here Mrs. Houser's contributory negligence was in issue and there was evidence which might

have warranted a finding of contributory negligence. This kind of instruction was condemned in *Welker* v. *Scripps Clinic etc. Foundation, supra,* 196 Cal.App.2d at page 344, and *Kite* v. *Coastal Oil Co., supra,* 162 Cal.App.2d at page 345.

Plaintiff's other instruction was the so-called educational or explanatory instruction on res ipsa loquitur formerly appearing as BAJI No. 206-C. Its utilization depended entirely on the propriety of the instruction we have just been discussing. Since the latter was properly rejected, there was no occasion for giving the former.

The defense submitted and the trial court gave the following instruction: "The mere fact that an accident happened, considered alone, does not prove that it was caused by the negligence of anyone." The instruction is a replica of BAJI 131, revised. Plaintiff assigns it as error, citing decisions which disapprove similar instructions in res ipsa loquitur cases. Those decisions involved an earlier version of BAJI 131, reading: "The mere fact that an accident happened, considered alone, does not give rise to a legal inference that it was caused by negligence or that any party to this action was negligent." While the revised language of the BAJI instruction eliminates the word "inference," the actual force of the instruction is hardly altered. This instruction, in its earlier version, was held to create prejudicial error in cases where the evidence compelled the res ipsa loquitur inference as a matter of law, even though—as here—no actual instruction on res ipsa loquitur was given. (*Alarid* v. *Vanier,* 50 Cal.2d 617, 625 [327 P.2d 897]; *Jensen* v. *Minard,* 44 Cal.2d 325, 329 [282 P.2d 7].) On the other hand, where application of res ipsa loquitur is a fact question for the jury and no instruction on res ipsa loquitur is requested, or a defective instruction is rejected, the "mere happening" instruction does not create error justifying reversal on appeal. (*Guerra* v. *Handlery Hotels, Inc., supra,* 53 Cal.2d 266, 271-273; *Shaw* v. *Pacific Greyhound Lines,* 50 Cal.2d 153, 158 [323 P.2d 391]; *Phillips* v. *Noble,* 50 Cal.2d 163, 166-168 [323 P.2d 385]; *Barrera* v. *De La Torre,* 48 Cal.2d 166, 171-172 [308 P.2d 724]; *DeMartini* v. *Alexander Sanitarium, Inc.,* 192 Cal.App.2d 442, 445 [13 Cal.Rptr. 564].) Such is the situation here.

Plaintiff assigns error in rejection of an instruction that plaintiff did not assume the risk of any injury that could have come to her only through the negligence of

defendants. This instruction formerly appeared as BAJI 207-E, but was withdrawn from the book of model forms after the Supreme Court's 1954 decision in *Prescott* v. *Ralphs Grocery Co.*, 42 Cal.2d 158 [265 P.2d 904]. Plaintiff's brief is barren of argument or authority supporting the claim of error. We will not review an unsupported claim of error. (*Jacques* v. *Firestone Tire & Rubber Co.*, 183 Cal.App.2d 632, 636 [6 Cal.Rptr. 878].)

Finally, plaintiff urges error in rejection of evidence offered to demonstrate that after the accident defendants removed the adjustment pins from the ski-lift chairs. Plaintiff's counsel are candid in recognizing the established common law and California rule excluding evidence of precautions taken after an accident as proof of negligence, but permitting it in exceptional instances under the multiple admissibility doctrine. (*Daggett* v. *Atchison, T. & S. F. Ry. Co.*, 48 Cal.2d 655, 660-661 [313 P.2d 557]; *Pierce* v. *J. C. Penney Co.*, 167 Cal.App.2d 3, 7-12 [334 P.2d 117]; Witkin, California Evidence, p. 187; 2 Wigmore on Evidence, § 283.) No exceptional purpose is asserted here. On the contrary, counsel urge that ''a reconsideration of this point of law is in order,'' citing several out-of-state decisions described in 64 American Law Reports 2d at page 1315. If newly developed policy revelations merit demolition of an evidentiary rule so deeply entrenched in time and common law precedent, those revelations should be displayed before a higher tribunal than this. *Stare decisis* compels us to follow the decisions of the state Supreme Court, rejecting, however regretfully, the opportunity offered by this assignment of error.

Judgment affirmed.

Pierce, P. J., and Schottky, J., concurred.

A petition for a rehearing was denied October 16, 1963, and appellant's petition for a hearing by the Supreme Court was denied November 27, 1963.