[Civ. No. 10869. Third Dist. Apr. 12, 1965.]

JACK W. GREENING et al., Plaintiffs and Appellants, v. GENERAL AIR-CONDITIONING CORP. et al., Defendants and Respondents.

Peters & Peters and David R. Fuller for Plaintiffs and Appellants.

Newton & Braun, William J. Braun and William W. Coshow for Defendants and Respondents.

FRIEDMAN, J.—Plaintiffs had a combination office and guest house constructed on their ranch. As the aftermath of a fire plaintiffs brought this damage action against Womack, the sheet metal subcontractor, and General Air-Conditioning Corporation, manufacturer of the combination heating and air conditioning unit (or heat pump) installed in the building by Womack. The action went to trial before the court sitting without a jury. At the close of plaintiffs' evidence defendants moved for judgment pursuant to Code of Civil Procedure

section 631.8. The motion was granted. Findings were then filed and judgment entered. Plaintiffs appeal.

The building was a rectangular structure, divided into four rooms by a wall running from front to rear and an intersecting wall from one side to the other. The four rooms thus created were a carport and an office at the front of the building and a shop and bedroom in the rear. From the front entry a central hallway extended along the interior wall of the office as far as the lateral wall. The office adjoined the hall on one side, the carport on the other. The heat pump was installed under the rafters in the carport adjoining the wall separating the carport and hallway. In the ceiling of the hall a wooden box, called a plenum, was constructed. The heat pump propelled hot or cold air through a wall opening into the plenum, and vents in the plenum directed the air into the rooms. Construction of the plenum was the responsibility of the general contractor, who was not a defendant in the action.

The heat pump was installed in February 1959. It did not work satisfactorily and the Womack firm made a series of calls to service the unit. On June 23, 1959, they replaced a filter. On July 16, 1959, they made a service call in connection with dirty filters and a defrost switch. On August 26, 1959, the defrost switch was changed. On December 23, 1959, a burnt out coil on the evaporator motor was replaced. On January 6, 1960, the evaporator motor had to be replaced. Six days later, on January 12, 1960, a new relay was installed. There was a repair ticket dated January 13, 1960, which did not indicate what work was done but stated, "Compressor just hums. Won't run." On January 22 the compressor was replaced. February 17 the defrost switch was replaced. On April 1, 1960, Womack's service man made a service call described by the following entry: "Checked unit for operation. Found blower motor not functioning, and rewired same. Loose wire." A few hours after Womack's repairman left the house on April 1 a fire broke out in the interior of the plenum. The inside of the plenum, portions of the wiring in the control box and the rafter from which the heat pump was suspended were all burned.

In conformity with Code of Civil Procedure section 631.8, the trial court made findings. It was found that: (1) the major part of the fire and its starting point were in the plenum; (2) the evidence failed to show that the heat pump produced excessive heat; (3) the evidence failed to show over-

heating of the heating elements within the heat pump; (4) neither defendant was responsible for the construction or design of the plenum; (5) the heat pump was, in fact, operating during the fire; (6) the evidence was insufficient to support a finding that the heat pump caused the fire; (7) the evidence failed to prove that the heat pump was of improper design or that the design contributed to the fire; (8) the evidence failed to prove that the heat pump was improperly installed or that its installation contributed to the fire; (9) the evidence failed to prove that Womack's maintenance operations were improper or contributed to the fire. As a conclusion of law the trial court found that "the doctrine of res ipsa loquitur does not apply to the present case."

The complaint was in three counts, framed upon theories of negligence, breach of warranty and breach of contract. Plaintiffs' appellate attack centers mainly on the trial court's conclusion that res ipsa loquitur did not apply as a matter of law. That conclusion, of course, affected only the negligence count. Plaintiffs make a secondary argument that "a case was also proved" under the breach of contract and breach of warranty theories, the latter in view of *Greenman* v. *Yuba Power Products, Inc.,* 59 Cal.2d 57 [27 Cal.Rptr. 697, 377 P.2d 897], and *Vandermark* v. *Ford Motor Co.,* 61 Cal.2d 256 [37 Cal.Rptr. 896, 391 P.2d 168]. The secondary argument overlooks an essential factor in establishing a claim under either theory and pays inadequate heed to the character of the trial judge's role in passing upon a motion for judgment under Code of Civil Procedure section 631.8.

■ The plaintiff in a breach of contract action must prove that the breach was the cause of his damage. (Civ. Code, § 3300; *Automatic Poultry Feeder Co.* v. *Wedel,* 213 Cal. App.2d 509, 515-516 [28 Cal.Rptr. 795].) ■ Similarly, the *Greenman* theory of strict tort liability arising from defective manufactured products is premised on proof of a causal relationship between the defect and the injury. Nothing in *Greenman* or *Vandermark* dispenses with proof of proximate cause. (See *Greenman* v. *Yuba Power Products, Inc., supra,* 59 Cal.2d at p. 62; *Vandermark* v. *Ford Motor Co., supra,* 61 Cal.2d at p. 263.) As to General Air-Conditioning Corporation, manufacturer of the heat pump, the trial judge found that plaintiffs' evidence was insufficient to support a finding that the heat pump or its design caused the fire. Assuming—but certainly not deciding—that the strict liability doctrine obtaining in defective products cases might be dilated to embrace

defective buildings, we confront a trial court finding of an absence of proof that installation or maintenance by defendant Womack caused the fire. If these findings are impervious to factual attack, plaintiffs have lost their action for breach of warranty (or strict tort liability) and breach of contract.

■ The 1961 enactment of Code of Civil Procedure section 631.8 substituted the "motion for judgment" for the nonsuit motion formerly available in nonjury trials. On the nonsuit motion the truth of the plaintiff's evidence had to be assumed and all inferences drawn in the plaintiff's favor. (2 Witkin, Cal. Procedure, Trial, §§ 125-127, pp. 1857-1860.) The new motion-for-judgment procedure requires the trial judge to weigh the evidence. Section 631.8 declares: "The court as trier of the facts shall weigh the evidence and may render a judgment in favor of the moving party, in which case the court shall make findings . . . ." In weighing the evidence, the trial judge may exercise the prerogatives of a fact trier by refusing to believe witnesses and by drawing conclusions at odds with expert opinion. If the motion is granted, his findings are entitled to the same respect on appeal as any other findings and are not reversible if supported by substantial evidence. (*Woolliscroft* v. *Starr,* 225 Cal.App.2d 667, 669-670 [37 Cal.Rptr. 570]; *Estate of Sharff,* 219 Cal.App.2d 128, 132 [33 Cal.Rptr. 52].)

Application of the substantial evidence rule to findings made under section 631.8 is not without its difficulties. In the present case, for example, the findings are drawn in negative rather than positive terms. They do not say that the damage was not caused by the claimed defect, but rather that there was *no proof* that the damage was so caused. After a successful defense motion under section 631.8, it is quite logical to draw findings in terms of the absence of affirmative proof rather than the presence of negative proof. ■ Proof of the latter sort usually awaits the defendant's case, and the very purpose of the motion is to eliminate the necessity of defense evidence.

However logical at the trial court level, findings so drawn pose some difficulty on appeal. To find *substantial* evidence in support of a finding of *no* evidence draws the reviewing court into a kind of juridical shell game. There is a more palatable approach. ■ Frequently the real crux of the argument on appeal is the plaintiff-appellant's claim that the trial judge refused to draw all available inferences from the plaintiff's evidence. Such a claim is quite in order on appellate

review of a nonsuit motion, because there the trial judge is obliged to draw inferences favorable to plaintiff. Where, as here, the trial judge is directed by statute to weigh the evidence and make findings, he has no such obligation. Rather, he may draw such inferences as seem reasonable to him.

■ The following then becomes the appropriate rule on appeal: " 'When two or more inferences can be reasonably deduced from the facts, the reviewing court is without power to substitute its deductions for those of the trial court . . . .' " (*Callahan* v. *Gray*, 44 Cal.2d 107, 111 [279 P.2d 963]; 3 Witkin, Cal. Procedure, Appeal, § 88, pp. 2251-2252.)

■ In granting defendants' motion for judgment, the trial judge filed an opinion which assists materially in appraising his view of the evidence. He noted from photographic exhibits that a large amount of smoke was blown from the plenum into the office, from which he drew the inference that the fire had progressed substantially in the plenum while the heat pump was operating. Although an expert witness had testified that the heat pump was not Underwriter Laboratory approved and that heat made it dangerous to place the equipment so close to the wooden rafter, the trial court noted that the heating coils were on the opposite side of the machine from the burned rafter. Observing that proof of malfunction was confined to the motors and noting existence of testimony that the equipment was generally fit and safe, the court concluded that the heat pump had no inherently dangerous features which might cause a fire.

On appeal, we cannot say that the inferences drawn by the trial court were at all unreasonable. Accordingly, we have no power to disturb the findings of lack of evidence of causation. Thus, as regards the breach of contract and breach of warranty counts, the defense judgment is impervious to attack.

The negligence count presents a different problem. There the trial court concluded as a matter of law that res ipsa loquitur did not apply. Since the very purpose of the res ipsa loquitur rule is to substitute an inference of negligence for missing proof, plaintiffs' evidence might have been adequate to justify inferred negligence, at least to the point of requiring defendants to come forward with rebuttal evidence.

■ Where the facts justify the res ipsa loquitur inference the trier of fact must draw it, thus requiring the defense to go forward with rebuttal evidence. (*Burr* v. *Sherwin Williams Co.*, 42 Cal.2d 682, 688, 691 [268 P.2d 1041].) Plaintiffs' evidence in this case might have been adequate to convince

the fact trier that all the elements of res ipsa loquitur were actually present. This possibility was excluded from the fact-finding process because the trial court rejected res ipsa loquitur as a matter of law, relying on *Weaver* v. *Shell Oil Co.*, 13 Cal.App.2d 643 [57 P.2d 571].

In the *Weaver* case the plaintiffs' decedent was killed in an explosion and fire which occurred while the defendant's tank truck was delivering gasoline. There being no proof of the defendant's negligence, the appellate court rejected res ipsa loquitur, quoting with approval the following statement: "Thus it has been said that the doctrine [of res ipsa loquitur] is applicable only when the nature of the accident itself not only supports the inference of defendant's negligence but excludes all others."

The general conditions for invoking res ipsa loquitur have been summarized as follows: "[R]es ipsa loquitur applies where the accident is of such a nature that it can be said, in the light of past experience, that it probably was the result of negligence by someone and that the defendant is probably the person who is responsible. In determining whether such probabilities exist with regard to a particular occurrence, the courts have relied both upon common knowledge and the testimony of expert witnesses, and they have considered the circumstances relating to the accident in each particular case, such as the extent of control exercised by the defendant, the plaintiff's own conduct, the likelihood of negligence by some third person, and, in some situations, evidence that the defendant is better able than the plaintiff to explain what happened. All of these matters have been treated as aids to help the courts in determining whether the accident was of such a nature that the injury was more probably than not the result of the defendant's negligence." (*Zentz* v. *Cola Cola Bottling Co.*, 39 Cal.2d 436, 446-447 [247 P.2d 344].)

 Fire damage cases have no peculiar characteristics isolating them from res ipsa loquitur. In *Roddiscraft, Inc.* v. *Skelton Logging Co.*, 212 Cal.App.2d 784 [28 Cal.Rptr. 277], the doctrine was applied to forest fire damage which occurred while defendant's tractor was being operated without a spark arrester. (212 Cal.App.2d at p. 798.) Res ipsa loquitur has been employed in fire damage suits involving combustible liquid fuels. (*Ward* v. *Silveria*, 102 Cal.App.2d 114 [226 P.2d 732]; *Roselip* v. *Raisch*, 73 Cal.App.2d 125 [166 P.2d 340]; cf. *Davidson* v. *American Liquid Gas Corp.*, 32 Cal. App.2d 382 [89 P.2d 1103].) It has been approved in support

of a plaintiff whose property was burned when a sagging electric power cable came within arcing distance of vegetation. (*Phillips* v. *Southern Cal. Edison Co.*, 23 Cal.App.2d 222 [72 P.2d 769].) In the closely related area of negligence inferred from circumstantial evidence, this court sustained an inference of negligence when defendant's electrician worked on the wiring of a neon sign which started to smoke and burn shortly afterward, observing: "Fires do not normally occur from electric wiring that is properly installed and maintained." (*Alhambra Bowl, Inc.* v. *Ledbetter Sign Co.*, 211 Cal.App.2d 777, 781 [27 Cal.Rptr. 680].)

The trial court erred in following the *Weaver* case. The rule espoused in *Weaver* is out of line with the res ipsa loquitur doctrine as developed in current California case law. The doctrine does not require the plaintiff to produce evidence excluding all possible causes other than the defendant's negligence.[1] Given the other preconditions for res ipsa loquitur, the plaintiff need demonstrate only a "balance of probabilities" pointing to the defendant's negligence as a cause of the accident. (*Tucker* v. *Lombardo*, 47 Cal.2d 457, 465 [303 P.2d 1041]; *Zentz* v. *Coca Cola Bottling Co., supra*, 39 Cal.2d at p. 446; *Houser* v. *Floyd*, 220 Cal.App.2d 778, 783-784 [34 Cal.Rptr. 96, 94 A.L.R.2d 1423].) When the probability of the defendant's negligence is one of several inferences which may reasonably be drawn from the evidence, the decision whether or not to draw the inference is one of fact, not a matter of law. (*Davis* v. *Memorial Hospital*, 58 Cal.2d 815, 817 [26 Cal.Rptr. 633, 376 P.2d 561]; *Guerra* v. *Handlery Hotels, Inc.*, 53 Cal.2d 266, 271 [1 Cal.Rptr. 330, 347 P.2d 674]; *Seneris* v. *Haas*, 45 Cal.2d 811, 826-827 [291 P.2d 915, 53 A.L.R.2d 124].) A convenient phrase for describing the situation in which application of the doctrine turns on a factual decision is "conditional res ipsa loquitur." (See *Quintal* v. *Laurel Grove Hospital*, 62 Cal.2d 154, 164-166 [41 Cal.Rptr. 577, 397 P.2d 161].) In this case it cannot be said that res ipsa loquitur was inapplicable as a matter of law. Its presence or exclusion turns on a factual decision which the trial court did not make.

---

[1] An eminent commentator has described the *Weaver* case as one of "three cases . . . [in which] the California courts have fallen into the error of saying that the inference of negligence must be so compelling as to exclude all other inferences and leave no other acceptable cause for the accident." (Prosser, *Res Ipsa Loquitur in California*, 37 Cal.L.Rev. 183, 195.) Text statements relying upon the *Weaver* case merit reappraisal (see 22 Cal.Jur.2d 176).

No reported decision has considered trial court determination of the conditional res ipsa loquitur issue at the point of a motion under section 631.8, Code of Civil Procedure. The trial judge's inability to indulge in a qualitative evaluation of evidence on a nonsuit motion prevents a nonsuit where there is any evidence to support the res ipsa loquitur inference. (*Reynolds* v. *Natural Gas Equipment, Inc.*, 184 Cal. App.2d 724, 735-736 [7 Cal.Rptr. 879], and cases cited.)

The new motion-for-judgment procedure permits such an evaluation, since section 631.8 directs the court to weigh the evidence and make findings. No reason appears why the trial judge should not weigh and make a finding on the conditional res ipsa loquitur issue at the close of the plaintiff's case. Where direct evidence of negligence is absent, a finding against the probability of negligence will terminate the trial in the defendant's favor. An affirmative finding need only be tentative since the court may reweigh the identical issue after all the evidence is in. How thin the probability of negligence should be in order to justify granting the motion is perhaps a case-by-case decision, appellate review of which would be guided by the substantial evidence rule.

The present case confronts the fact trier with an electrical appliance mounted in close proximity to combustible structural elements. There is testimony of some design deficiency adversely affecting safety, although that deficiency, considered in isolation, had a problematical relationship to the fire. There is irrefragable demonstration of a series of repairs due to breakdowns and malfunctions in the electrical portions of the appliance. The fire occurs in close time sequence to the last of these repairs, one involving a loose electrical wire. At that point of the case there is no evidence of an unrelated mishap as a possible source of fire. There is, to be sure, a preexisting condition—design and construction of the plenum—which had been in the hands of a third party.

Nevertheless, participation by a third person or the plaintiff himself does not necessarily bar res ipsa loquitur so long as the evidence excludes that person's conduct as the responsible cause. (*Rose* v. *Melody Lane*, 39 Cal.2d 481, 486 [247 P.2d 335].) A fact trier might decide that operation of the appliance for some months without a fire excluded condition of the plenum as a responsible cause. Condition of the plenum was simply one weight on the scale of probabilities.

In so summarizing the facts, we make no attempt to usurp the fact finder in passing on the balance of probabilities.

We do hold that ''in the light of past experience'' these facts provide substantial evidence which, if uncontradicted, would have formed an adequate evidentiary basis for a finding of probable negligence. This evidence should have been weighed with that opposed to it, either at the point of defendants' motion for judgment or by denying the motion and requiring either or both defendants to go forward with rebuttal evidence. By the trial court's ruling on the law, plaintiffs were deprived of a factual decision which may have supplied them with the benefit of inferred negligence on the part of one or both defendants.

Judgment reversed.

Pierce, P. J., and Regan, J., concurred.