ALANSON S. BLANCHARD *vs.* CITY OF PORTLAND.

HARRY F. BLANCHARD *vs.* SAME.

Cumberland.   Opinion April 4, 1921.

*Unregistered motor vehicles and unlicensed operators of motor vehicles, not lawfully in the highways under R. S., Chap. 26, Sec. 28, unless within the exception under Chap. 26, Sec. 33, R. S.   Nor is a passenger in a motor vehicle driven by an unlicensed operator a lawful traveller upon the highway, so far as the town is concerned, unless such operator is within said exception.*

By R. S., Chap. 26, Sec. 28 the highways of the State are closed alike to unregistered motor vehicles and to unlicensed operators of motor vehicles.

In actions against towns to enforce a statutory liability for defects in the highways, it is not a question of casual connection in either case between the violation of the statute and the happening of the accident; the unregistered car and the unlicensed operator are alike expressly forbidden by the statute to pass along the highway.

So far as the town is concerned the unlicensed operator is not a lawful traveler upon the highway unless in any particular case he is within the exception found in R. S., Chap. 26, Sec. 33.

Nor is a passenger in a motor vehicle driven by an unlicensed operator a lawful traveler upon the highway, so far as the town is concerned, unless the unlicensed operator is within the exception found in said Section 33.

The words, "riding with or accompanied by a licensed operator," contained in said Section 33, mean that the licensed operator shall ride with, or accompany the unlicensed person, under such conditions and in such proximity that he can maintain the supervision over the unlicensed person necessary for safety, and render assistance, if need be, with reasonable promptness.

To be within the exception, the unlicensed person must be operating the vehicle in company with the licensed operator "for the purpose of becoming familiar with the use and handling of a motor vehicle, preparatory to taking out a license for driving"—not necessarily for the sole purpose of becoming familiar with the vehicle, but that purpose must be present in his mind.

Upon the undisputed facts the court is of the opinion that Harry F. Blanchard, the unlicensed operator and part owner of the motor vehicle in which Alanson S. Blanchard was riding was not within the protection of Sec. 33 of Chap. 26 of the R. S.

On exceptions and motions for a new trial by defendant.   These actions were brought to recover damages for personal injuries in one case, and injuries to a motor truck in the other or second, resulting from an automobile accident caused by an alleged defect in the highway in the City of Portland.   Both cases were tried to a jury, and at the conclusion of the evidence the defendant moved for a directed verdict, which was denied, and to this refusal defendant excepted. The defendant also took exceptions to certain rulings of the court, and to the refusal of the court to give certain requested instructions.

The jury awarded a verdict for plaintiff in each case, and defendant filed a motion in each case for a new trial.   The defendant among other contentions asserted that the plaintiffs were not, at the time of the accident, legally in the highway, in that the driver had no operator's license, and that they did not come within the exception in Sec. 33, Chap. 26, R. S.   Exceptions sustained.   Motions for a new trial granted.

Case is stated in the opinion.

*Frank H. Haskell,* for plaintiffs.

*Clifford E. McGlauflin,* for defendant.

SITTING:  CORNISH, C. J., SPEAR, HANSON, MORRILL, WILSON, JJ.

MORRILL, J.   These are actions to recover damages claimed to have been received by reason of a defect in a highway, the first for personal injuries, the second for injuries to a motor truck.   The actions were tried together resulting in verdicts for the plaintiffs, and are before us upon a single bill of exceptions and upon motions for new trials.

A decision upon the exception to the ruling refusing to direct a verdict for the defendant, upon the ground that the plaintiffs failed to prove that they were lawfully traveling upon the highway, is decisive of the cases.

The accident happened on Sunday, July 15, 1917; on that day one Frederick W. Blanchard, the father of the two plaintiffs, left his home in South Portland and drove in a motor truck to the house of his son, Harry F. Blanchard, also in South Portland; he took with him in the truck two younger sons, Alanson S., then about six years old, and Willis.   Frederick W. Blanchard and Harry F. Blanchard were partners in business, as plasterers; the motor truck was the

property of the partnership and was duly registered; the father held a license to operate motor vehicles, duly issued in accordance with the provisions of R. S., Chap. 26, Sec. 31; the son, Harry F. Blanchard was not so licensed. The father and son had arranged to work on this Sunday on a job of plastering which they were doing in Portland; they left the son's house in the truck on their way to work, the father driving the truck; they had proceeded about a quarter of a mile when they changed places, the son Harry F., taking the wheel, because, as he testifies, "my father wasn't feeling well;" they proceeded, Harry driving, Alanson sitting on his father's knee, and Willis sitting in the rear of the truck. As they approached the southerly end of the bridge over Stroudwater river, the truck struck the alleged defects in the highway; Harry lost control of the truck, which ran about its length upon the bridge, swung to the left, going over the side of the bridge and into the river.

The question at once arises whether the plaintiffs were lawful travelers on the highway; it is only such travelers who have a cause of action against the municipality to recover damages for injuries received through defects in the highways.

The statute law of this State, R. S., Chap. 26, Sec. 28, provides:

"No motor vehicle of any kind shall be operated by a resident of this State, upon any highway, townway, public street, avenue, driveway, park or parkway, unless registered as provided in this chapter, and no person, a resident of the State, shall operate a motor vehicle upon any highway, townway, public street, avenue, driveway, park or parkway unless licensed to do so, under the provisions of Section 31."

The first part of this section relating to unregistered motor vehicles was under consideration in *McCarthy* v. *Leeds*, 115 Maine, 134, and in *McCarthy, Admr.* v. *Leeds*, 116 Maine, 275, and it was there held that neither the owner of, nor the passengers in an unregistered motor vehicle can recover damages from a town for injuries received on account of a defective highway while operating or riding in such unregistered motor vehicle. In such cases it is not a question of causal connection between the violation of the statute and the happening of the accident. "These decisions were based squarely and solely upon the proposition that the liability of a town for defects in its ways and bridges is purely statutory and the duty owed by the town is only to lawful travelers; that the occupants of an unregis-

tered automobile are not lawful travelers so far as the town is concerned, and therefore no duty is owed to them by the town except to refrain from wilful injury." *Cobb* v. *Cumberland County Power & Light Co.,* 117 Maine, 455, 463.

The instant cases must be held to be ruled by the McCarthy Cases, unless Harry F. Blanchard was at the time of the accident within the exception of Sec. 33 of Chap. 26, which will be considered later. As pointed out in the case last cited, *Cobb* v. *Cumb. County Power & Light Co.,* the reason for the prohibition to the animate unlicensed driver is greater and more practical than the prohibition to the inanimate unregistered car. "An inert automobile of itself is harmless, whether registered or not. It is only when in motion that danger attaches. But an unlicensed driver operating a machine may be the cause of much injury. . . . . The act providing for registration has no tendency to prevent collisions, while that requiring the licensing of operators does have that tendency, in so far as it may prevent incompetent persons from managing an engine fraught with such capacity for injury. The Legislature however has made no distinction between the two and has provided merely a penalty in either case and the same penalty."

It must follow that the highways of the State are closed alike to unregistered motor vehicles and to unlicensed operators. *McCarthy, Admr.* v. *Inhbts. of Leeds,* 116 Maine, 275, 279; in actions against towns to enforce a statutory liability for defects in the highways, it is not a question of causal connection in either case between the violation of the statute and the happening of the accident; the unregistered car and the unlicensed operator are alike expressly forbidden by the statute to pass along the highway. So far as the town is concerned the unlicensed operator is not a lawful traveler unless in any particular case he is within the exception found in Section 33, which reads as follows:

"The preceding sections shall not be construed to prevent the operation of motor vehicles by unlicensed persons, if riding with or accompanied by a licensed operator, for the purpose of becoming familiar with the use and handling of a motor vehicle, preparatory to taking out license for driving."

This provision was evidently intended to enable an inexperienced person to learn to operate a motor vehicle by operating it under the supervision and instruction of a licensed operator. The words,

"riding with or accompanied by a licensed operator," mean that the licensed operator shall ride with, or accompany the unlicensed person, under such conditions and in such proximity that he can maintain the supervision over the unlicensed person necessary for safety, and render assistance, if need be, with reasonable promptness. *Bourne v. Whitman,* 209 Mass., 155, 165. It is also clear that the unlicensed person must be operating the vehicle in company with the licensed operator "for the purpose of becoming familiar with the use and handling of a motor vehicle, preparatory to taking out license for driving" . . . . not necessarily for the sole purpose of becoming familiar with the vehicle, but that purpose must be present in his mind.

Upon the undisputed facts we think that Harry F. Blanchard was not within the protection of this exception; his testimony is convincing on this point and admits of no other conclusion.

The father and son were going by prearrangement to work upon a plastering job upon which they were engaged; the father drove the car for a quarter of a mile after leaving the son's house, and they then changed places, not to give the son an opportunity to learn to drive, but "because my father was not feeling well," as the son testifies; they then proceeded, the father holding the little six years old boy in his lap; he was in no position to render assistance when his son lost control of the truck—at a time when, as shown by the tracks on the bridge, slight assistance promptly given would have averted the accident. The testimony of Harry F. Blanchard shows that the firm had owned a truck for about four years; that he had driven the truck first owned by the firm, a Reo Machine, on at least two occasions when requested to do so by his father; that he had driven the truck to which the accident happened on at least one occasion, alone, carrying his father's license; that he had driven it several times with his father; that he was not licensed to operate either truck; the only particular in which he claims that he was not qualified to drive the truck, was that he had trouble with the gears, but whether that trouble arose from inexperience or from defects in a second hand truck is not clear. The testimony of the son is convincing that the father and son changed places and the father surrendered the wheel, not to enable the son to learn to operate, but because the father was not feeling well; they changed just as any two persons accustomed to operate a motor truck would change under similar circumstances.

The intention to take out a license, entertained in January as the young man claims, cannot be recognized as continuing unaccomplished and unrealized for six months to serve as a shield against the consequences of violating the law by operating the firm's truck when inclination or convenience dictated. Such intention must be pursued toward its fulfilment with reasonable diligence.

To hold that these persons at the time of the accident were occupying the positions, the one, of a licensed operator riding with or accompanying an unlicensed person to exercise supervision and render assistance, the other of a person driving for the purpose of becoming familiar with the use and handling of the truck preparatory to taking out a license for driving, would in effect nullify the statute prohibiting in the interest of public safety the operation of motor vehicles by unlicensed persons.

For these reasons the requested ruling that a verdict be directed for the defendant should have been given; and for the same reasons the motions for new trials must be granted.

*Exceptions sustained.*
*Motions for new trials*
*granted.*