# Richmond

VIDA TATUM SMITH, ADMINISTRATRIX, ETC. v. DORA TATUM.

April 26, 1957.

Record No. 4652.

Present, Hudgins, C. J., and Eggleston, Buchanan, Miller, Whittle and Snead, JJ.

The opinion states the case.

*George E. Allen* (*Allen, Allen, Allen & Allen*, on brief), for the plaintiff in error.

*G. Kenneth Miller* (*John G. May, Jr.*, on brief), for the defendant in error.

BUCHANAN, J., delivered the opinion of the court.

This is an action for damages for the death of a father-in-law who was giving his daughter-in-law a driving lesson. It was brought by the administratrix of the father-in-law, as plaintiff, against the daughter-in-law, as defendant. A trial by jury resulted in a verdict and judgment for the defendant. The plaintiff appeals and assigns errors which she says present the following questions:

(1) Whether the gross negligence or the simple negligence rule is applicable; (2) whether contributory negligence of the decedent should have been submitted to the jury; and (3) whether an instruction on unavoidable accident was proper. The answers depend, of course, upon the facts, which the jury could have found from the evidence to be as follows:

Dora Tatum, the defendant, was fifty years old and married to a son of Norman C. Tatum, the deceased. She owned a 1941 Cadillac automobile which she had purchased the latter part of June, 1952, and so far as she knew it was in good condition. She had no driver's license but in July, 1952, had obtained a learner's permit, which entitled her to drive on the highways for ninety days when accompanied by a licensed operator sitting beside her. Code, § 46-361. She had had a learner's permit several years before and had taken some lessons on the farm and had driven some on the highways with her husband in his car while she had the first permit. She had ridden in automobiles more or less since 1947 and was familiar with the functions of the accelerator, brake and steering wheel. The day of the accident was the first time Mr. Tatum, the decedent, had driven with her; but her sister-in-law, Mrs. Lorente, had taken her out one time and she had one other lesson in the city in addition to some out on the farm.

On the morning of July 25, 1952, the defendant was awakened in her apartment on Hanover Avenue, in Richmond, by the sound of an automobile horn and discovered Mr. Tatum in his car across the

street.  He wanted to know if she wanted to take a driving lesson. She replied that she had not had breakfast and he said his daughter, Mrs. Lorente, was coming into town and would take her out.  He drove off but came back later and said his daughter had an appointment but he would take her out.  They proceeded in defendant's car up Hanover Avenue, with her driving at about twenty miles an hour, to the Boulevard, where she stopped and asked him which way he wanted her to go.  He told her to go across the Boulevard and turn left, which she did without trouble.  They proceeded down the Boulevard and turned right on what she thought was Sheppard Street.  As she was crossing a street a bus approached and stopped at the curb.  He asked her how she knew where the bus was going and she answered that it was not in her way and she was not in its way.  That was the last thing she remembered.  She was seriously injured in the accident and the evidence furnishes no account of the movement of the car from that point to the place of the accident on another street.

The accident happened on Rugby Road, which descends steeply and enters Pump House Drive on a sharp curve, referred to by one of plaintiff's witnesses as very dangerous.  This witness, Mrs. Ingraham, was standing in her yard near the foot of Rugby Road, heard a heavy sound of wheels and some screeching, and looked up just as the car came into view.  It was going, she said, at terrific speed, out of control and swerving and bouncing as if someone was trying to stop it.  The car first hit the curb in front of her house, then suddenly as if to avoid hitting a tree standing at the end of the curve "they made a terrific pull" which took them across Pump House Drive directly into a tree on the opposite side.  She said that as the vehicle passed her both occupants were on the driver's side of the car and behind the steering wheel.

She and her gardener, who was working in her yard, ran to the car which had struck the tree about midway of the bumper, practically demolishing the front of the vehicle.  When they got there the defendant was lying prostrate over the steering wheel and Mr. Tatum was down on the floor of the car to her right, pinned under the back seat which had been thrown forward.  The occupants of the car were taken to a hospital and Mr. Tatum died of his injuries without speaking except to give expression to his suffering at the scene of the accident.

The gardener testified that as the car passed him a lady was driving

and Mr. Tatum was sitting on the right-hand side next to the door, "as far as I could see," but his account lacked clarity and could have failed to impress the jury.

After the accident the defendant had a bruise on top of her right foot which she said "looked like it was stomped or kicked," and there was evidence for the plaintiff that while the defendant was in the hospital she said she believed that the decedent must have kicked her foot as hard as he could to get it off the accelerator. The defendant did not remember making such statement.

■ The defendant contends that this evidence does not establish any negligence on her part, either simple or gross, and assigns cross error to the court's refusal to sustain her motion to strike the evidence on that ground, among others. The court instructed the jury that unless the defendant was guilty of gross negligence the plaintiff could not recover. The plaintiff contends that simple negligence was all she had to prove. We look first to that question which the plaintiff's counsel stated in argument to be the controlling question. The answer depends on whether the plaintiff's decedent was a guest in defendant's car without payment for his transportation within the terms of the statute.

Section 8-646.1 of the Code, enacted in 1938, provides that no person transported by the owner or operator of a motor vehicle "as a guest without payment for such transportation," and no personal representative of such guest, may recover damages for death or injury resulting from the operation of the vehicle unless caused by the gross negligence of the owner or operator. That section has been construed and applied in a number of recent cases in this court and it is not necessary to look beyond them for the principle controlling in this jurisdiction.

In *Miller* v. *Ellis*, 188 Va. 207, 49 S. E. 2d 273, the plaintiff, defendant and one Kelly were friends. Defendant offered to transport plaintiff's goods in his truck if plaintiff would help him move a stove for Kelly. Kelly's stove was accordingly moved and then on the trip transporting plaintiff's goods there was an accident and plaintiff was injured. Plaintiff was denied recovery on the ground that the transaction was barren of any business character incident to a contractual relation, and also lacking "in those mutual benefits to both plaintiff and defendant made requisite by sec. 2154 (232) of the Code [now § 8-646.1] and the decisions of this court to remove the

plaintiff from the status of a mere guest." 188 Va. at 213, 49 S. E. 2d at 276.

The payment referred to in the statute does not, of course, have to be in cash in order to make the occupant a paying passenger rather than a guest. If a person bargains for services and the transportation is given in consideration thereof; the person performing the services is a paying passenger and not a guest passenger. *Dickerson* v. *Miller*, 196 Va. 659, 663, 85 S. E. 2d 275, 277; but the services performed "must be more than gratuitous gestures of reciprocal hospitality, or social amenities, extended without thought of bargaining for the transportation." *Davis* v. *Williams*, 194 Va. 541, 546, 74 S. E. 2d 58, 61.

In *Hill Hardware Corp.* v. *Hesson*, 198 Va. 425, 94 S. E. 2d 256, decided last September, Moss, a friend of Hesson, was injured while being transported by Hesson to the home of the latter's father to fix a water pump, for which he expected to make no charge. While Hesson's father did derive benefit from Moss' services, yet as stated in the opinion holding Moss to be a nonpaying passenger, "none of the three intended or expected that any business relationship be created . . . for the service to be rendered was considered by all as a gratuity and friendly act." It was repeated that "mere giving and receiving of friendly and reciprocal benefits and amenities between the driver and occupant without any thought of creating a business or contractual relation is insufficient to change the status of a guest to that of a paying passenger within the meaning of § 8-646.1." 198 Va. at 429-30, 94 S. E. 2d at 258-9.

In the present case decedent volunteered to go with the defendant to give her a driving lesson. There was no mutual or reciprocal benefit to him in being transported by the defendant. Neither of them expected or intended that any business or contractual relationship would be thereby created, but the service being rendered to the defendant was considered by both as a gratuitous and friendly act, prompted only by family relationship and' interest. A suggestion that there was a contract for transportation under which compensation was to be charged by the father-in-law and paid by the daughter-in-law would doubtless "have met the displeasure of both at the time." *Hale* v. *Hale*, 219 N. C. 191, 13 S. E. 2d 221, tried under the Virginia statute.

Clearly, we think, the decedent was "a guest without payment" for his transportation to whom the defendant was liable only for

gross negligence under the terms of the statute, and no error against the plaintiff was committed by so instructing the jury.

■ The plaintiff complains also of the refusal of her offered instruction which would have applied the *res ipsa loquitur* doctrine requiring the defendant to rebut a presumption of negligence. That doctrine is based on a defendant's exclusive control of the instrument causing the injury and an occurrence which does not ordinarily happen if due care is used. *Virginia Transit Co.* v. *Durham,* 190 Va. 979, 59 S. E. 2d 58. The doctrine is inapplicable here because the defendant did not have exclusive control. The decedent was present in the automobile because the statute required the defendant to have a licensed driver on the front seat with her. This was obviously for the purpose that he give directions and exercise control if the occasion required. Moreover, if the doctrine applied it would not carry the plaintiff's burden of proving gross negligence.

■ Plaintiff says next that the court erred in submitting the question of decedent's contributory negligence to the jury. There was, we think, about as much ground for submitting the question of decedent's negligence as there was for submitting the question of defendant's negligence. No real explanation appears in the evidence as to what caused this accident. The defendant asked the decedent which way to go and he told her. The only witnesses who saw the car between that time and the collision with the tree were Mrs. Ingraham and her gardener. The former testified that the car was out of control when it came into view, running at high speed, swerving and bouncing. As it passed her both occupants were on the driver's side and behind the steering wheel. When and why the decedent got behind the steering wheel nobody knows. Who was responsible for the speed and movements of the car is likewise unanswered. Mrs. Ingraham referred to the "drivers" of the car and said "they made a terrific pull" which swerved the car across the road and into the tree. The defendant's statement that the bruise on her foot might have been due to the decedent's kicking it to get it off the accelerator was surmise. Those who saw the car after the wreck could have as validly speculated that it resulted from the crash into the tree. Whether the speed of the car was caused by a trapped accelerator or by a kick or pressure by the decedent on defendant's foot; why decedent did not apply one of the brakes; which one was controlling the steering wheel and who caused the final turn into the tree are matters undetermined by the evidence. *Cf. Richter v. Sea-*

*well,* 183 Va. 379, 32 S. E. 2d 62; *Keen* v. *Harman,* 183 Va. 670, 33 S. E. 2d 197.

In view of the decedent's choice of the route, his potential control of the car and the evidence of his sharing in or interfering with the steering of the car, it was not error to submit to the jury the question of his negligence.

■ Finally, it is said there was error in giving an instruction telling the jury that there is such a thing as an unavoidable accident and if they believed this was one they should find for the defendant. The instruction was inappropriate but not reversible error. An unavoidable accident, in the sense used in the instruction, means an accident which ordinary care and diligence could not have prevented. 1 C. J. S., Accident, p. 443; Black's Law Dict., de luxe 3d ed., p. 1772. This was not an unavoidable accident. It was due to the negligence of one or the other, or both, of the occupants. Whether the defendant was grossly negligent and whether the negligence of the decedent contributed to the accident were at most questions for the jury. Their verdict for the defendant was amply supported if not in fact required by the evidence and the judgment thereon is accordingly

*Affirmed.*