J. & JAY, INC.

*vs.*

E. PERRY IRON & METAL CO., INC.

Cumberland.   Opinion, June 8, 1965

230

*Alan J. Levenson, Esq.,* for Plaintiff.

*Lawrence P. Mahoney, Esq.,* and
*Richard D. Hewes, Esq.,* for Defendant.

SITTING: WILLIAMSON, C.J., WEBBER, TAPLEY, SULLIVAN, MARDEN, JJ. SIDDALL, J. sat at argument but retired before the opinion was adopted.

WILLIAMSON, C.J. This tort action is before us on appeal from the direction of a verdict for the defendant at the close of the plaintiff's case. The plaintiff charges that his truck was damaged through the negligent operation of a crane in unloading a heavy steel machine.

There are two controlling issues. First: Is *res ipsa loquitur* applicable? Second: If so, is *res ipsa loquitur* available to the plaintiff under the pretrial order?

Under the familiar rule we take the evidence including inferences reasonably to be drawn therefrom in the light most favorable to the appellant. *MacLean* v. *Jack,* 160 Me. 93, 100, 198 A. (2nd) 1. Due care on the part of the plaintiff is not in issue and points of appeal relating to evidence and the measure of damages are of no moment for our purposes.

The jury would have been warranted in finding in substance as follows:

The plaintiff, owner of the truck, was employed by Nicholas DiPietro to move scrap metal and machinery purchased by the latter from the Bancroft & Martin yard to the junk yard of the defendant. The duties of the plaintiff were limited solely to the transportation. The loading and unloading of the truck was carried out by or under the direction of DiPietro and others.

In loading the truck for the third trip, "Bud" Bridges, an employee of DiPietro, placed a sling about the machine, and attached the sling to hooks on the Bancroft & Martin crane. The crane operator then hoisted the machine from the ground and placed it in the truck. Chains were affixed to keep the machine in place. The trip of several miles was without incident.

At the defendant's yard Stephen Ham, the plaintiff's driver, placed the truck as instructed directly under the lifting cable of the defendant's crane. Bridges hooked the sling, which had remained about the machine, to the cable of the crane in the same manner as the sling had been attached to the Bancroft & Martin crane. The plan was that the defendant's crane operator would "take a strain on it," that is to say, would hoist the machine from the floor of the truck. The truck would then be driven from beneath the machine and the machine lowered to the ground.

The crane operator could see the truck, the load, and Bridges. The driver and the crane operator, however, could not see each other. Bridges stood by the truck to pass a signal from the crane operator to the truck driver to move the truck.

The plaintiff's truck was specially designed to carry heavy loads of scrap metal. The body of the truck was 16 feet in length, 7 feet 6 inches in width, and 8 feet 4 inches from the ground to the top of the body. The body, of reinforced steel, was about 4 feet 4 inches in height. The machine, weighing an estimated 8 to $8\frac{1}{2}$ tons, was about 7 feet in height, placed upright on the truck, and thus reached 3 feet above the sides. The tailgate on the truck was down at the time of the accident.

The truck remained stationary at the point where the driver had been directed. The driver testified that no signal to move was given. As the machine was being hoisted, it struck the side of the truck, causing it to overturn with the resulting damage.

The machine lay with its base within the truck and roughly horizontal with the ground. The sling and the crane cables were unharmed, and the machine was shortly lifted and placed elsewhere by the crane.

The witnesses with direct testimony bearing on the unloading were Bridges and DiPietro. The truck driver saw nothing. In the words of Bridges, "[The crane operator], pulled in the slack first to hold the cable; then he started taking the strain on the cable after I was in front of the truck. . . Well, it happened so quick, it was rainy that day and it was steel against steel. She just slid and she started tipping. I just jumped back."

DiPietro, standing near the truck, saw the machine lifted from the floor of the truck, the "slipping," as it was termed, the truck overturn, and the end result of the accident.

The doctrine of *res ipsa loquitur* in our opinion is applicable. We are satisfied that damage does not ordinarily flow from the shifting or dropping of a load in the operation of a crane in the absence of negligence. It is not unreasonable, therefore, that the person charged with the operation of the crane should face an inference of negligence naturally drawn from the known facts, if he cannot explain his conduct.

We conclude that the evidence would warrant the inference and thus a finding of negligence on the part of someone between the placing of the machine on the truck at Bancroft & Martin and the accident in defendant's yard.

*Res ipsa loquitur* has been defined and applied repeatedly in our cases.

> "The doctrine of *res ipsa loquitur* is not substantive law. It does not need to be alleged in the declaration. It is a rule of evidence which warrants, but does not compel an inference of negligence. The doctrine does not affect the burden of proof. It merely shifts the burden of evidence. The defendant, who knows or should know, must explain. The rule applies where the accident is unexplained and the instrument causing the injury was under the management and control of the defendant, and the unexplained accident is one which does not ordinarily occur if due care is used. [Cases cited]

> "The doctrine of *res ipsa loquitur* is proper to be considered by the trier of facts where the circumstances are, as here, most uncommon, unusual, unexpected and extraordinary, and the damage is such that it would not ordinarily have occurred if the user of the dangerous instrumentality had the required knowledge, and proper care had been exercised in its use." *Cratty* v. *Aceto & Co.*, 151 Me. 126, 116 A. (2nd) 623.

> "*Res ipsa loquitur* is a rule of evidence which warrants, but does not compel, the inference of neg-

ligence. It does not dispense with the rule that the person alleging negligence must prove it, but is simply a mode of proving the negligence of the defendant inferentially. *Edwards* v. *Cumberland County, etc., Co.*, 128 Me. 207, 146 A 700; *Chaisson* v. *Williams.* . . [cited below]. The inference, however, must be warranted. The rule does not apply unless the unexplained accident is of a kind which does not, according to the common experience of mankind, occur if due care has been exercised. The basis of the inference is the doctrine of probabilities. Facts proven must, in their very nature, indicate such an unusual occurrence as to carry a strong inherent probability of negligence. Mere conjecture and surmise will not suffice." *Winslow* v. *Tibbetts*, 131 Me. 318, 322, 162 A. 785.

See also *Stodder* v. *Coca-Cola, Inc.*, 142 Me. 139, 48 A. (2nd) 622; *Nichols* v. *Kobratz*, 139 Me. 258, 29 A. (2nd) 161; *Chaisson* v. *Williams*, 130 Me. 341, 156 A. 154; *Leighton* v. *Dean*, 117 Me. 40, 102 A. 565; Annot. 81 A.L.R. (2nd) 477; 2 Harper and James § 19.5 et seq.; Prosser on Torts § 42; 38 Am. Jur. *Negligence* § 295 et seq.

It is of course not sufficient for the plaintiff simply to say that in the operation of the crane someone was negligent. The negligence for which the defendant may be charged must be based on action within the defendant's control. The plaintiff must eliminate the possibility of negligence on the part of others than the defendant by a preponderance of the evidence.

The stripping or removal of the possibility of negligence of A in an action against B is not peculiar to the doctrine of *res ipsa loquitur*. In every case the area of responsibility of the defendant must be determined.

From the moment the defendant's crane operator put on the "strain," that is, hoisted the machine from the truck, the unloading was without question under his control. It

is within this limited area of action that the plaintiff charges liability on the part of the defendant.

A jury would have been warranted in finding that there was no negligence in affixing the sling to the machine and to the defendant's crane. We have seen that the sling was used without difficulty in loading at Bancroft & Martin's, and undamaged by the accident was again used in lifting the machine. The jury could properly infer that due care was used by DiPietro and Bridges under the circumstances.

With this limitation upon the responsibility of the defendant, an inference of negligence in the operation of the crane under the circumstances here disclosed would be permissible. *International Derrick & Equipment Co.* v *Buxbaum,* 210 F. (2nd) 384 (3rd Cir.) and *Taylor* v. *Crane Rental Co.,* 254 F. (2nd) 350 (C.A.D.C.) illustrate the elimination of the possibility of negligence by a third party in the application of *res ipsa loquitur.*

In *International,* a broadcasting mast fell while it was being raised to the top of a tower. The defendant had exclusive control as to the choice of equipment and its use, the timing and the details incident to the actual erection of the antenna. Entry of a judgment for the defendant was reversed for failure to consider *res ipsa loquitur.*

In *Taylor,* in a per curiam opinion the Court considered that it was plausible that the crane operator misapplied the controls or that the hook attached by the moving party himself slipped off the pipe which caused the accident. As the Court said, "it would be sheer speculation to conclude that the cause of the accident was one within defendant's exclusive control; the record does not present a case within the doctrine of *res ipsa loquitur.*"

The argument has been made that the right to control is sufficient to meet the test of exclusive control in the application of the doctrine. See for example *Giacalone* v.

*Raytheon Manufacturing Co.,* 222 F. (2nd) 249 (1st Cir.). Without doubt, defendant's crane operator need not have hoisted a load which he deemed too heavy or improperly attached.

We are not of the view, however, that under the circumstances responsibility for negligence, if any, on the part of Bridges in attaching the sling to the crane would fall upon the defendant. We need not, and do not, determine the precise limits of "exclusive control" as a matter of law. It is sufficient here that the jury properly could have excluded negligence of others than the defendant from the cause of the accident.

The defendant further argues that the plaintiff lost the benefit of *res ipsa loquitur* from his failure to inquire of Alfred Raplee, the crane operator for the defendant, how the accident happened. Raplee was called to the stand by the plaintiff, testified only upon the method of operating the crane, and was asked no questions whatsoever about the accident. The defendant did not cross-examine. As the defendant states in its brief, "There was no attempt to learn, from the person (Raplee) with the best vantage point, how this accident happened."

*Res ipsa loquitur* remained open to the plaintiff. The record in the case, as we have seen, was sufficient to warrant the application of the doctrine.

On the defendant's theory, the same principle would be applicable whether the crane operator had been on the stand, or was in the courtroom, or was otherwise available to testify. In *Johnson* v. *U. S.*, 333 U. S. 46, 68 S. Ct. 391, in applying the doctrine of *res ipsa loquitur* to a situation involving an injury to a seaman on a tanker owned and operated by the United States, the Court said, at p. 392:

> "We have only a partial account of how the injury
> to petitioner occurred. Dudder was not called.

The only testimony we have is from petitioner and his version of the episode is uncontradicted. The block which it was Dudder's duty to hold (and which weighed 25 or 30 pounds) was permitted to fall; it hit petitioner on the head and caused the injury for which this libel in personam. . . was filed under the Jones Act. . ."

\* \* \* \* \* \* \* \* \* \*

"But where, as here, the injured person is not implicated . . . the falling of the block is alone sufficient basis for an inference that the man who held the block was negligent. In short, Dudder alone remains implicated, since on the record either he or petitioner was the cause of the accident and it appears that petitioner was not responsible."

Mr. Justice Frankfurter, in dissenting, said at p. 395:

"But I do not believe that *res ipsa loquitur* is applicable here. It is, after all, a 'rule of necessity to be invoked only when necessary evidence is absent and not readily available.' . . . Here the evidence as to the cause of petitioner's injuries was admittedly available, and it would seem to follow that since what actually happened could have been adjudicated, it should have been adjudicated."

\* \* \* \* \* \* \* \* \* \*

"Dudder's account of what happened surely could supplement Johnson's as a basis for recreating the events which led to Johnson's injury. Neither party saw fit to use his available testimony. Instead of entering judgment for the party who had the burden of proof and did not meet it, the trial judge should at least have called Dudder as the court's witness."

In our view it would place an unnecessary and unreasonable burden on a plaintiff to insist that he offer the evidence of a defendant, or of an employee under defendant's control, or else sacrifice *res ipsa loquitur.*

In the instant case, the conduct of the crane operator was directly in issue. He could have been examined as readily by the defendant as by the plaintiff. In the absence of his evidence on the cause of the accident, the applicability of *res ipsa loquitur* must rest on the record.

The second question is whether in light of the pretrial order, *res ipsa loquitur* was removed from the case, and hence not available to the plaintiff. The order reads in part:

> "The plaintiff will claim that the crane was under the exclusive control of the defendant Corporation.

> \* \* \* \* \* \* \* \* \* \*

> "It is anticipated the evidence will show that a Mr. DiPietro and a Mr. Bridges had actually hooked the hooks of the crane on to the steel at such places as were specified by the crane operator."

Reality at the trial did not reach the plaintiff's anticipation. The evidence plainly disclosed that the crane operator did not specify where the hooks should be placed.

The lack of the anticipated evidence does not weaken the fair weight of the evidence in the record. The failure of proof benefited the defendant, it may be noted, and not the plaintiff. The difficulty of establishing the essential fact of exclusive control to warrant the application of *res ipsa loquitur* was obviously increased.

From the outset the plaintiff relied in large measure on *res ipsa loquitur*. Cf. *Miller* v. *Brazel,* 300 F. (2nd) 283 (10th Cir.). The plaintiff's theory is not to be discarded at least in the absence of surprise which would make reliance upon the doctrine unfair to the defendant.

In *Bickford* v. *Berry,* 160 Me. 9, 196 A. (2nd) 752, and also 160 Me. 132, at 134, 199 A. (2nd) 566, by pretrial order, "Specifically there was eliminated from the case

any claim or contention by the defendant that he was in the act of lawfully passing the plaintiffs from the rear at the time of the collision. This was of great importance as affecting the elements of proof required of the plaintiffs and as affecting the duty owed by plaintiff driver in making a left turn under the existing circumstances."

Here the plaintiff anticipated certain evidence, but he did not deny reliance on *res ipsa loquitur* in the event the fact should be otherwise.

We conclude that the jury should have been given the opportunity to infer negligence in the operation of the crane by defendant's employee.

The entry will be:

*Appeal sustained.*