**Elizabeth M. CORBETT, Walton Corbett**

**v.**

**Olive CURTIS.**

Supreme Judicial Court of Maine.

Jan. 4, 1967.

Frank W. Linnell, Auburn, for plaintiffs.

John A. Platz, Lewiston, for defendant.

Before WILLIAMSON, C. J., and TAP-LEY, MARDEN and DUFRESNE, JJ.

TAPLEY, Justice.

These cases are before us on defendant's appeals from denial of motions for judgments notwithstanding the verdicts, and for new trials based on refusal of the presiding Justice to give certain requested instructions to the jury. The cases were tried in the Superior Court, within and for the County of Oxford, resulting in judgments for the plaintiffs. Plaintiff, Elizabeth M. Corbett, a lady of 54 years, drove from her home in South Paris to the defendant's residence in West Paris for the purpose of enabling the defendant, Mrs. Curtis, who was at the time 67 years of age and in possession of a learner's permit, to practice her driving. Mrs. Curtis had previously taken driver's training instructions and had done some driving but felt that she needed more practice in turning and backing the car. Upon the plaintiff's arrival at the home of Mrs. Curtis in West Paris the two ladies entered the defendant's automobile. Because of the steepness of the driveway Mrs. Corbett backed the car out of the yard and after it got on Pioneer Street Mrs. Curtis took over the operation of the motor vehicle with Mrs. Corbett seated on the passenger's side of the front seat. With Mrs. Curtis driving they proceeded along Pioneer Street and entered the main highway, then they went to the home of one Thalia Curtis who lived nearby, briefly stopping for the purpose of inquiring about directions, after which they continued on to a one-lane dirt road which led toward a bridge spanning Little Androscoggin River. Their destination was a gravel pit on the other side of the river in which Mrs. Curtis understood there was ample room to practice turning and parking the car. At a point near the bridge defendant Curtis, who was operating the car, stopped and discussed with plaintiff Corbett the question as to whether she should continue to operate the car across the bridge. After a brief discussion of the question it was decided that Mrs. Curtis should continue in the operation of the car. According to the photograph of the bridge it was an old wooden bridge sufficient in width to accommodate an automobile. As the car was being driven over the bridge it suddenly veered to the right at about midway across and dropped into the river a short

distance below. Neither party could explain why the car suddenly changed its direction and went off the bridge into the river.

The defendant contends (1) that the doctrine of assumption of risk applies; (2) that plaintiff was guilty of contributory negligence as a matter of law; and (3) that the evidence was insufficient to warrant a finding that negligence of defendant was proximate cause of plaintiff's injuries.

█ The defendant was operating the motor vehicle by right of a learner's permit under provisions and by authority of 29 M.R.S.A., Sec. 537:

"No person shall operate a motor vehicle upon any way in this State unless licensed according to this Title. This section shall not prevent the operation of a motor vehicle by an unlicensed person, not less than 15 years of age who holds an instruction permit, if riding beside a licensed operator in said vehicle for the purpose of becoming familiar with the use and handling of a motor vehicle preparatory to taking out license for driving, and provided such unlicensed person has not theretofore had a license revoked, suspended or finally refused."

The necessity for the plaintiff being in the automobile on this occasion was because of the statutory requirement of Sec. 537. According to the pre-trial order, "The purpose of the ride was to enable defendant to practise driving." The intent of Sec. 537 is well expressed in Blanchard v. City of Portland, 120 Me. 142 where the court said, on pages 145, 146, 113 A. 18, on page 19:

"This provision was evidently intended to enable an inexperienced person to learn to operate a motor vehicle by operating it under the supervision and instruction of a licensed operator. The words, 'riding with or accompanied by a licensed operator' mean that the licensed operator shall ride with or accompany the unlicensed person, under such conditions and in such proximity that he can maintain the super-vision over the unlicensed person necessary for safety, and render assistance, if need be, with reasonable promptness. * * * It is also clear that the unlicensed operator must be operating the vehicle in company with the licensed operator 'for the purpose of becoming familiar with the use and handling of a motor vehicle, preparatory to taking out license for driving,' not necessarily for the sole purpose of becoming familiar with the vehicle, but that purpose must be present in his mind."

█ Under the particular circumstances of this case, neither the plaintiff nor the defendant are able to explain what caused the car to suddenly veer off the bridge and into the stream below. The plaintiff must first prove the negligence of the defendant and it is apparent that it can only be done through the doctrine of *res ipsa loquitur*.

"The maxim of *res ipsa loquitur*, 'the thing itself speaks,' might, in practice, be translated, 'the accident spells negligence.' It does not dispense with the requirement that the one who alleges negligence must prove it. It is a rule of evidence that relates to the mode of proof. It is applicable, where there has been an unexplained accident, and the instrument that caused the injury *was under the management or control of the defendant,* and in the ordinary course of events the accident would not have happened if the defendant had used due care." (emphasis supplied). Stodder v. Coca-Cola Bottling Plants, Inc., 142 Me. 139, at 142, 48 A.2d 622, at 624.

"The doctrine of *res ipsa loquitur* is not substantive law. It does not need to be alleged in the declaration. It is a rule of evidence which warrants, but does not compel an inference of negligence. The doctrine does not affect the burden of proof. It merely shifts the burden of evidence. The defendant, who knows or should know, must explain. The rule applies where the accident is unexplained

and the instrument causing the injury was *under the management and control of the defendant,* and the unexplained accident is one which does not ordinarily occur if due care is used." (emphasis supplied). Cratty v. Samuel Aceto & Co., 151 Me. 126, at 132, 116 A.2d 623, at 627.

"Where an automobile, and the operation thereof, are exclusively within the control of the defendant, whose guest is injured, and it is not reasonably in the power of such guest to prove the cause of the accident, which is one not commonly incident, according to everyday experience, to the operation of an automobile, the occurrence itself, although unexplained, is *prima facie* evidence of negligence on the part of the defendant. *Res ipsa loquitur*—the thing speaks for itself." Chaisson v. Williams, 130 Me. 341, 346, 156 A. 154, at 157.

If plaintiff fails to prove the elements of *res ipsa loquitur* she cannot prevail. The record shows that the defendant was operating the vehicle and that without warning it suddenly veered off the bridge for no apparent reason. In addition to these elements she must prove the defendant had "exclusive control" as in *Chaisson,* supra, or as it is expressed in *Stodder,* supra and *Cratty,* supra, "management or control." This court in J. & Jay, Inc. v. E. Perry Iron & Metal Co., Inc., 161 Me. 229, 210 A.2d 462, in considering the application of *res ipsa loquitur,* cites with approval those cases requiring the vehicle to be under the "management and control" of the defendant. It also cites Chaisson v. Williams, supra, which holds that the vehicle must be under the "exclusive control" of the operator. In view of the fact that some states have rule of "exclusive control," we think that where Maine has the maxim of *res ipsa loquitur* that the requirement of "under management and control" is preferable to "exclusive control." The pertinent question now is, did the defendant have management and control of the vehicle at the moment it, for some unexplained cause or reason, suddenly veered off the bridge?

 The negligence charged against the defendant must be based on action within the defendant's control. J. & Jay, Inc. v. E. Perry Iron & Metal Co., Inc., supra. It was a factual question for the jury to determine whether or not the defendant had the management and control of the vehicle at that moment when the car suddenly veered. This is true in spite of the fact that the statute required the plaintiff to maintain supervision over and render assistance, if need be, to the defendant in her operation of the motor vehicle. After the car driven by the defendant started across the bridge the testimony described the action as follows:

"Q. Now, you started ahead. When you started ahead, did Mrs. Corbett assist you in any way?

A. Yes, because there was a question of turning that sharp turn.

Q. Yes.

A. And she helped me to make the sharp turn.

Q. And then you got straightened out, started across the bridge, is that right? And what was Mrs. Corbett doing then?

A. She was sitting there.

Q. Sitting in the passenger's side?

A. Yes.

Q. When—Do you know what caused the accident?

A. No.

Q. You don't—what did happen? What was the next thing you did, or remember happening?

A. The next thing, we were in the river.

Q. You don't know how you got there. Did you hear a crash?

A. Yes.

\* \* \* \* \* \*

Q. Driving straight ahead?

A. Yes.

Q. Having any conversation with Mrs. Corbett?

A. No."

There is testimony in the case which plainly demonstrates the fact that the plaintiff, Mrs. Corbett, as they approached the bridge asserted some control over the motion of the car by putting her hand on the wheel guiding the car to the right. There is nothing in the evidence to indicate that after they had started across the bridge that the complete management and control of the vehicle was in anyone other than Mrs. Curtis, the defendant. There were no suggestions, advice or physical interference on the part of the plaintiff influencing the control of the vehicle by the driver while it was traversing the bridge. Mrs. Corbett testified in substance that she exerted some control over the vehicle just before entering onto the bridge.

"Q. Was that before you got on the bridge?

A. Yes, before we got to the bridge.

Q. And then what did you do?

A. Then I sat back and we proceeded along, she proceeded along herself.

Q. Was she driving straight across the bridge?

A. Yes.

Q. Wht next occurred?

A. I don't know. I woke up in the water, next thing you know."

The question whether or not the defendant was in management and control of the vehicle when it veered off the bridge was one of fact for the jury. The jury was properly instructed as to the *res ipsa loquitur doctrine* and by their finding of liability it is obvious that they determined factually that the defendant was in the management and control of the vehicle at the time of the mishap.

The defendant further contends that the plaintiff should not recover because she assumed the risk and, further, that she was guilty of contributory negligence as a matter of law.

The evidence discloses that Olive Curtis, the defendant, a lady of 67 years, obtained a driver's permit in September of 1962, some five years previous to which she had taken some training from a teacher. She also had driven with her husband occasionally and twice with the plaintiff, Mrs. Corbett, who, incidentally, was a niece of Mrs. Curtis' husband. The trip which the ladies took on the day of the accident was occasioned by the fact that Mrs. Curtis desired more experience in parking and backing the car. When Mrs. Corbett entered the car that day she was aware of the fact that Mrs. Curtis had had previous experience in driving the car, having ridden with her on two previous occasions. She also was cognizant of the fact that the purpose of the trip was to go to a place where Mrs. Curtis would be able to practice turning and backing.

 In considering assumption of risk, the court in Richards v. Richards, 324 S.W.2d 400 (Ky.), at pages 401 and 402, states:

"The term presumes some danger, a knowledge thereof, and ordinarily implies an appreciation of the danger and acquiescence therein. 7 C.J.S. Assumption of Risk p. 137. The doctrine applies where one may reasonably elect whether or not he shall expose himself to a particular danger. To invoke the doctrine, it is essential that the risk or danger shall have been known to, or appreciated by, plaintiff. 65 C.J.S. Negligence § 174, pp. 848, 851.

"Some courts regard the assumption of risk and contributory negligence as interchangeable, but there is a distinction since assumption of risk is a mental state of willingness, while contributory negligence implies a failure of plaintiff to exercise due care. Also, assumed risk is based upon voluntary exposure to danger and is applicable only to cases where the injured person might reasonably elect whether or not he should expose himself to the danger. 38 Am.Jur. 'Negligence', § 173, p. 847.

"In Porter v. Cornett, 306 Ky. 25, 206 S.W.2d 83, 85, we wrote, 'In their legal effect, the two doctrines are identical. They deny the right of recovery where the injured person with a knowledge of a dangerous situation voluntarily places himself in a position where he takes the chances of being hurt.' "

8 Am.Jur.2d, Automobiles and Highway Traffic, Sec. 539:

"Generally, one who is licensed to operate a motor vehicle, and who voluntarily accompanies a driver who has just received a learner's permit for the purpose of teaching him to drive, assumes the risk of the learner's inexperience and may not recover damages for personal injuries caused by the lack of skill or inexperience of the learner. In some cases, it has been held under the circumstances that a licensed motor vehicle operator accompanying a person driving under an instruction permit to enable the latter to comply with statutory requirements does not, as a matter of law, assume the risk of the permittee's negligence, but that the question of assumption of risk is for the jury."

In Richards v. Richards, supra, Edgar Richards purchased an automobile and Allen, his brother, a licensed driver, was teaching him to drive. Edgar had a beginner's permit. Edgar, while operating the car, put his foot "too hard" on the accelerator and lost control of the car which crashed into a tree. The court held that where Allen was instructing his brother Edgar in the proper use of the controls any improper use by Edgar is a risk which Allen, the teacher, must assume. In Aloisio et al. v. Nelson et al., 27 Misc.2d 343, 209 N.Y.S.2d 674, a licensed operator was accompanying a driver having a learner's permit in order to instruct the unlicensed operator. The unlicensed driver made a left turn and because of her inexperience and lack of skill she turned too wide which caused the car to strike a pole. The case holds that a licensed operator accompanying one with a learner's permit assumes the risk of the permittee's inexperience and cannot recover damages for injuries caused by the inexperience or lack of skill. A passenger who was knowledgeable of the facts that the driver had only a learner's permit and had failed in one driver's test assumed risk of accident which occurred *solely* as a result of driver's *lack of skill and experience.* St. Denis v. Skidmore, 14 A.D.2d 981, 221 N.Y.S.2d 613. See LeFleur v. Vergilia et al., 280 App.Div. 1035, 117 N.Y.S.2d 244 and Troquille v. American Universal Ins. Co. (La.App.), 127 So.2d 590. The passenger assumes any risk incident to the driver's lack of skill and inexperience if known, or should have been known, to him but not as to any acts of negligence in the operation of the car not attributable to lack of skill or inexperience. The assumption of risk carries with it the knowledge of taking a chance, while in negligence there is the unforeseen or unexpected incident, the circumstances of which may or may not demonstrate a negligent act on the part of the operator. The risk of negligent operation is not assumed if it is not caused by lack of skill or inexperience.

The weight of authority holds that a person riding with an unlicensed operator for the purpose of instructing him in the operation of the car assumes the risk of injury if it is occasioned by the lack of skill and experience of the driver. This is not so, however, if the action results from

an act of negligence on the part of the driver not attributable to his lack of skill or experience. When a person enters a car for the purposes of supervising and assisting one in possession of a learner's permit to practice driving, and also to satisfy the requirements of Sec. 537, he is not as a matter of law subject to the rule of assumption of risk. Assumption of risk is an affirmative defense with the burden of proof on the defendant. M.R.C.P. Rule 8 (c); Field & McKusick, Sec. 8.10; Restatement, Torts (2nd ed.), Sec. 496–G. The assumption of risk under the circumstances of the instant case is a jury question. Roberts et al. v. Craig et al., 124 Cal.App. 2d 202, 268 P.2d 500, 43 A.L.R.2d 1146. See Annotation in 43 A.L.R.2d at page 1162.

Counsel for the defendant claims error on the part of the court in declining to give the following requested instructions:

"A licensed motor vehicle operator who voluntarily accompanies a defendant who has a learner's permit, in the defendant's automobile for the purpose of teaching the defendant to drive, assumes the risk of the defendants' inexperience and can not recover damages for personal injuries caused by a lack of skill or inexperience of the defendant.

"The licensed operator shall ride with or accompany the unlicensed person, under such conditions and in such proximity that he can maintain the supervision over the unlicensed person necessary for safety, and render assistance, if need be, with reasonable promptness."

We have carefully reviewed the charge of the presiding Justice and find that he properly instructed the jury to the degree that the defendant had suffered no prejudicial error.

In conclusion, we point out that where neither occupant of the motor vehicle was able to testify as to the cause of the car suddenly veering to the right of the bridge and dropping into the water the

application of the rule of res ipsa loquitur to these circumstances is proper. The jury apparently found, under proper instructions by the Court, that the plaintiff had proven all the elements of res ipsa loquitur and thereby determined negligence on the part of the defendant, and that there was no sufficient evidence in the case that any lack of skill or inexperience on the part of the defendant in the operation of the car was the proximate cause of the accident.

We find sufficient evidence to warrant jury verdict.

The entry will be,

Appeals denied.

WEBBER and RUDMAN, JJ., did not sit.

DUFRESNE, Justice (dissenting in part).

The factual setting for the accident in which the plaintiff wife received her injuries need not be restated. Let us however retouch the painted scene so that certain significant existing physical conditions may show, which do not appear in the running account of the majority opinion. The automobile in which the plaintiff wife was riding made a right side exit into the low-level waters of the Little Androscoggin River from "an old wooden bridge sufficient in width to accommodate an automobile." Said bridge was further described by a state police officer as having a top longitudinal plank flooring 10 feet wide, with, in addition thereto, on either side, an overlapping sub-planking extending another 2 feet to the "pretty weak" side railing. The officer testified that in dead center, between the dual sections of longitudinal planking, there was an open space of uncertain size, from which the traveler could peek through to the distant stream. Thus, the bridge had an over-all width of 14 feet 3 inches, while its length was stated to be 25 feet, maybe 30.

The defendant, Mrs. Curtis, 67 years of age and in possession of a learner's permit, was driving her husband's automobile while the plaintiff, Mrs. Corbett, 54 years old, was riding beside her as the licensed operator required under 29 M.R.S.A. § 537, and it is undisputed that the purpose of the trip was to permit the defendant to receive more practical experience in turning and backing the car preparatory to taking out her license for driving.

Initially, let us say that the majority characterizes the course of the travel of the car as a sudden veering off the bridge. In no less than 5 times it so describes the happening of the accident. But no witness has so particularized the occurrence. A close reading of the record disputes such a conclusion, and rather supports the inference that this "barely crawling" automobile traveled the ten to fifteen feet distance to the point where it crashed against the railing of the bridge in a straight line that constantly swerved to the right. Such is the more reasonable interpretation of the evidence within the pre-accident factual circumstances. Mrs. Corbett admitted that immediately prior to entering the bridge proper, she had to assist Mrs. Curtis in correcting her right turn which she was making too wide. She did this by taking the wheel, explaining that "we need to go a little more to the right." She had hold of the wheel "long enough to get me headed straight, so I could enter the bridge on a straight line." Although both parties do aver that the defendant was operating the car on the bridge for that distance of 10 to 15 feet up to the crash against the side railing and that during that time Mrs. Corbett did not touch the wheel, the only reasonable deduction from the evidence is that the positioning of the car, immediately prior to its entry upon the bridge, with the physical assistance of Mrs. Corbett, was such that it was not located in exact center but displayed a position angling towards the right, which Mrs. Curtis carried forward by steering the automobile straight against the side of the bridge. The only

other explanation would be that Mrs. Curtis could not during that short distance of 10 to 15 feet drive in a straight line without swerving somewhat to the right on this very narrow bridge. Such explanation appears reasonable if one considers that Mrs. Curtis' driving inexperience, to the knowledge of Mrs. Corbett, had to do with keeping the automobile on the road. On a previous trip when Mrs. Curtis was practicing her driving with Mrs. Corbett, the latter described an incident as follows:

"Q. That trip was there anything eventful occurred?

A. Just once; heading up the hill I thought we were going to get [it] — we was a little too far on the right-hand side, and I just took hold of the wheel. And I says, 'Olive, turn into the road a little more. You're a little too far out.' And we straightened out the machine."

The majority says that the plaintiff must first prove the negligence of the defendant and it is apparent that it can only be done through the doctrine of res ipsa loquitur. We admit that the plaintiff had the burden of proving her case by proof of negligence of the defendant which proximately caused the accident and plaintiff's injuries, but we do not agree that this could only be done through the doctrine of res ipsa loquitur in the instant trial. The evidence was sufficiently detailed for the jury to determine the cause of the accident without resort to the rule of res ipsa loquitur and the court's instructions to the jury in relation thereto created an imbalance in favor of the plaintiff which aggrieved the defendant and was legal error.

The trial court's instructions on res ipsa loquitur were as follows:

"If the jury finds that the motor vehicle in question was under the control or wholly within the control of this defendant and it left the highway or the traveled portion of the road unexplained, then that is evidence upon which this

jury could make a finding of negligence on the part of this defendant. * * *. And if the evidence is such * * * and it is undisputed that this vehicle left the traveled portion of a road and went over the bridge and into the water * * * so unless you find, and it will be for you to say that it is explained or unexplained * * * if you find it is unexplained, and the vehicle was under the control of the defendant, and it left the road, then upon that basis the jury would be justified in finding that this defendant was guilty of negligence. That, as I say, will be your first responsibility. And, as I have indicated in general, there are no great conflicts, or there is no great conflict in the facts, in the factual situation. The parties are in substantial agreement as to what occurred on this particular day. And I don't think that there is any conflict over the fact that this vehicle being operated by this defendant left the surface of the road and went outside the limits of the bridge and dropped down into the water below. It will be, however, for the jury to make the determination that the vehicle was solely within the control of this defendant at the time that it left the highway, and that the * * * that its reason for leaving the highway was unexplained."

The court did not further instruct the jury as to what it meant when it referred to the reason for leaving the highway being *unexplained*; nor did it instruct the jury that it could apply the rule of res ipsa loquitur only after it had considered the plaintiff's participation in the occurrence and had exonerated her of any contributory negligent conduct, especially in the discharge of her statutory duties imposed by 29 M.R.S.A. § 537.

This is not the case of the ordinary guest passenger who at no time is duty bound to take physical control of the operation of the vehicle. His duties at the most consist in warning the operator against apparent danger. In the absence of a duty to exercise control over the vehicle, the guest's conduct whatever it may be is no obstacle to the application of the doctrine of res ipsa loquitur and comes up for court or jury evaluation only as a matter of contributory negligence. Not so however in the instant case where the statute permits the licensed operator to enter the field of driver education; in undertaking to participate therein, the licensed operator is invested with the right of control and is charged with the duty to exercise control whenever necessary for safety. Indeed, this court, as pointed out by the majority, indicated in Blanchard v. City of Portland, 120 Me. 142, 113 A. 18, that the purpose of the statute which requires that the unlicensed operator who holds an instruction permit *ride beside* a licensed operator was to provide and maintain such supervision and assistance when necessary over the unlicensed operator as will make for the safe operation of the motor vehicle. Such construction of our statute imposes upon the licensed operator who undertakes to accompany the holder of a learner's permit for the purpose of the latter's learning about the use and handling of motor vehicles, as fully as if the statute itself had spelled it out, the duty to supervise the operation of the vehicle at all times and to render meaningful assistance when required for the safety of the operation to the extent of taking physical control thereof when necessary.

In Smith v. Tatum, 199 Va. 85, 97 S.E. 2d 820 (1957), the Supreme Court of Appeals of Virginia, in a similar case, said:

"The doctrine [of res ipsa loquitur] is inapplicable here because the defendant did not have exclusive control. The decedent was present in the automobile because the statute required the defendant to have a licensed driver on the front seat with her. This was obviously for the purpose that he give directions and *exercise control* if the occasion required." [Emphasis supplied.]

We do recognize that the Virginia court's pronouncement on the inapplicability of

the doctrine of res ipsa loquitur to the facts of that case was not required for the ultimate decision therein as that court further stated that "if the doctrine applied it would not carry the plaintiff's burden of proving gross negligence." Even so, the court's judicial treatment of the rule as applied to cases where simple negligence is involved meets with our approval.

The majority opinion puts upon the plaintiff the duty to prove that the defendant had "exclusive control" as an element of the res ipsa loquitur doctrine; yet it seems to indicate an abandonment of that requirement for a rule that simply required the injury-causing instrumentality to be "under the management and control" of the defendant. Is the proffered preference for the simple management and control device at the time of the accident an express overruling in principle of our recent decision in J. & Jay, Inc. v. E. Perry Iron & Metal Co., Inc., 161 Me. 229, 210 A.2d 462, which carries the fresh imprimatur of this Court concerning the "exclusive control" test?

In J. & Jay, Inc., supra, we have indicated limitations in the application of the "exclusive control" test. The qualification of the rule was stated to be "that the jury properly could have excluded negligence of others than the defendant from the cause of the accident." We agree, as stated in J. & Jay, Inc., that "[t]he plaintiff must eliminate the possibility of negligence on the part of others [including the injured party plaintiff] than the defendant by a preponderance of the evidence." If in the instant case the trial court had instructed the jury to that effect as a prerequisite to the application of the rule of res ipsa loquitur, there would have been no error and the jury verdict could stand.

The use of the "exclusive control" or "management and control" test is merely to aid the courts in determining whether, under the general rule of res ipsa loquitur, it is more probable than not that the injury was the result of the defendant's negligence. But the requirement of control, whether we

call it exclusive control or management and control is not an absolute one. Although the doctrine will not ordinarily apply if it is *equally probable* that the negligence that caused the accident was that of someone other than the defendant, the plaintiff need not exclude all other persons who might possibly have been responsible where the defendant's negligence, as in J. & Jay, Inc. supra, appears to be the more probable explanation. See, Zentz v. Coca Cola Bottling Co. of Fresno, 39 Cal.2d 436, 247 P.2d 344 (1952). Krohmer v. Dahl, 145 Mont. 491, 402 P.2d 979 (1965).

In Parlow v. Dan Hamm Drayage Co., 391 S.W.2d 315 (Mo.1965) at page 321, the rule on exclusive control is stated as follows:

"In this connection the 'exclusive control' which is spoken of as an essential element of the res ipsa doctrine does not have the same connotation as the element of control which bears upon the master-servant relationship. The essential meaning of this requirement for res ipsa is that 'the evidence must afford a rational basis for concluding that the cause of the accident was probably "such that the defendant would be responsible for any negligence connected with it." That does not mean that the possibility of other causes must be altogether eliminated, but only that their likelihood must be so reduced that the greater probability lies at defendant's door.' 2 Harper and James on Torts, Sec. 19.7, p. 1086."

Thus, a stool on which an injured plaintiff sat may have been in the temporary possession of the plaintiff who had temporary occupancy thereof, yet the stool itself with its base mechanism was not thereby withdrawn from the exclusive control of the defendant hotel which had the responsibility for the stool as a proper instrumentality for the normal use of sitting thereon. "True, the lag bolt would not have broken if no one had touched the chair, but since the evidence excluded the plaintiff as the responsible cause, it may be fairly said

that there was an inference of negligence on the part of the defendants when the bolt broke as plaintiff attempted to rise from the stool." Gow v. Multnomah Hotel, 191 Or. 45, 224 P.2d 552, 228 P.2d 791 (1950).

Our own court stated in Cratty v. Samuel Aceto & Co., 151 Me. 126, at page 132, 116 A.2d 623, that the rule of res ipsa loquitur did not apply where the accident was in part the fault of the plaintiff. See also, Moose-A-Bec Quarries Co. v. Eastern Tractor & Equipment Co., 139 Me. 249, 29 A.2d 167.

In the instant case, plaintiff's possible breach of duty in her failure to exercise physical control over the steering of the car along the bridge as demanded by the statute, 29 M.R.S.A. § 537, may have been a contributing proximate cause of the accident and her injuries, at least equally as much so as defendant's negligence in the operation of the automobile. The defendant would not be responsible for the injuries resulting to the plaintiff, if as a matter of fact, plaintiff was guilty of the violation of her duties under the statute and said violation was a contributing proximate cause of the accident. The defendant was entitled to clear-cut instructions as to the duty of the plaintiff under the statute and as to the plaintiff's burden of eliminating her own contributory negligence proximately causing the accident before the jury could put the res ipsa loquitur doctrine into operation.

"The doctrine of res ipsa loquitur does not apply where the facts shown are equally consistent with the hypothesis that the injury sued for was caused by negligence of either party or of both combined." Nieman v. Jacobs, 87 Ariz. 44, 347 P.2d 702, 705 (1959).

"Where the evidence creates any doubt as to existence of the conditions for application of res ipsa loquitur, the decision is one of fact to be made by the jury, not one of law for the trial judge." Houser v. Floyd, 220 Cal.App.2d 778, 34 Cal.Rptr. 96, 100, 94 A.L.R.2d 1423 (D.C. Third District, 1963).

The instructions to the jury in the instant case permitted recovery by the plaintiff on the mere application of the doctrine of res ipsa loquitur. Such an instruction without limitation on its application sanctioned a recovery based on conjecture and surmise. To eliminate the conjectural aspect of the situation, the jury should have been instructed that before it could consider to apply the doctrine of res ipsa loquitur, the plaintiff had to establish as a fact by a preponderance of the evidence that the plaintiff herself was not contributorily negligent in the discharge of the positive duties incumbent upon her under the statute.

See also, National Construction Company v. Holt, 137 Colo. 208, 322 P.2d 1046, 1048 (1958); Castille v. Houston Fire & Casualty Insurance Co., (1957, La.Ct. of App. First Circuit) 92 So.2d 137; Lamb v. Hartford Accident & Indemnity Company, 180 Kan. 157, 300 P.2d 387, 393 (1956); Ryan v. Zweck-Wollenberg Co., 266 Wis. 630, 64 N.W.2d 226 at 231 (1954).

We have no way of telling whether the jury reached its verdict on the basis of the doctrine of res ipsa loquitur, and therefore, even though the jury might otherwise have resolved the factual question in dispute in favor of the plaintiff, if properly instructed as to the application of the doctrine or if the case had been submitted without the benefit of the doctrine, there was reversible error in permitting the jury to apply the rule without limitation or qualification. See, Johnson v. American Casualty Co. of Reading, Pa., 194 Cal.App.2d 367, 15 Cal.Rptr. 17 at page 19 (D.C. of App., Third District 1961); Boulder Valley Coal Co. v. Jernberg, 118 Colo. 486, 197 P.2d 155 (1948); Bollenbach v. Bloomenthal et al., 341 Ill. 539, 173 N.E. 670 (1930).

The issues of contributory negligence and assumption of the risk were for the jury.

For the reasons stated, we would sustain the appeal.